UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY SYKES,

    Plaintiff,

vs.

DERRICK ANDERSON, et al.,

    Defendants.
_____/

Civil Action No.
05-CV-71199-DT

HON. BERNARD A. FRIEDMAN

TEVYA GRACE URQUHART,

    Plaintiff,

vs.

CITY OF DETROIT DETECTIVE
SERGEANT DERRICK ANDERSON, et al.,

    Defendants.
_____/

Civil Action No.
05-CV-73725-DT

HON. BERNARD A. FRIEDMAN

### OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, and ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE A SUR-REPLY BRIEF

These consolidated matters are presently before the court on (1) defendants' motion for summary judgment [docket entry 73], and (2) plaintiffs' motion for leave to file a sur-reply brief [docket entry 93]. Pursuant to E.D. Mich. LR 7.1(e)(2), the court shall decide these motions without oral argument.

In both of these cases, plaintiffs allege they were the victims of an armed robbery that occurred on March 7, 2002, at a Sprint store in Detroit where both were employed. Plaintiffs immediately reported the robbery, and Detroit police officers responded. The officers interviewed

plaintiffs and a third employee, Kimberly Holmes, and proceeded with their investigation. In their "request for warrant," the officers asserted that "no robbery took place" and that in fact plaintiffs and Holmes "divided the funds taken from the safe early [sic] by defendant Holmes." Pltfs' Ex. 8, p. 2. The warrant request sought and obtained felony charges against plaintiffs and Holmes for larceny by conversion and false report of a felony. Plaintiffs were tried together in October 2002.[1] Both were convicted and sentenced to jail terms. In May 2004, the Michigan Court of Appeals reversed both convictions on the grounds that there was no evidence, only "speculation" and "impermissible inferences," to support the charges. *See People v. Sykes*, 2004 WL 950129 (Mich. Ct. App. May 4, 2004); *People v. Urquhart*, 2004 WL950062 (Mich. Ct. App. May 4, 2004).

Plaintiff Sykes asserts state law claims against six Detroit police officers for false arrest and false imprisonment, and federal constitutional claims under the Fourth and Fourteenth Amendments. She also asserts a claim against the City of Detroit for having caused the constitutional violations by failing to properly train, discipline or supervise the officers. Plaintiff Urquhart asserts claims against the same six officers and the city for Fourth and Fourteenth Amendment violations. Both plaintiffs allege that the officers lacked probable cause to arrest or charge them. Both seek damages, costs, interest and attorney fees.

Defendants initially moved for summary judgment in June 2006. The court denied that motion in August 2006 on the grounds that plaintiffs had not yet had an opportunity to conduct any discovery. The court denied defendants' motion "without prejudice to defendants' right to seek

---

[1] According to plaintiff Sykes' criminal defense attorney, Holmes was tried separately from Sykes and Urquhart because Holmes' attorney failed to appear for the preliminary examination. *See* pltfs' Ex. 26. Apparently, Holmes pled guilty to the larceny charge in September 2003. *See* pltfs' Ex. 40.

summary judgment after plaintiffs have had an opportunity to conduct full discovery." Pursuant to the court's scheduling order, discovery remained open until March 1, 2007, and motions could be filed until April 15, 2007.

Defendants filed the instant motion for summary judgment on June 29, 2007, approximately two and one-half months after the motion cutoff date. Federal Rule of Civil Procedure 16(b) states that a "schedule shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge." Unless modified, "[t]he scheduling order and the timetable it establishes will be *binding* . . . ." 6A C. Wright & A. Miller, *Federal Practice and Procedure* § 1522.1 (2007 Supp.) (emphasis added). Defendants did not attempt to modify the scheduling order or otherwise seek the court's permission to file a summary judgment motion after the motion cutoff date. In these circumstances, the court shall deny defendants' motion as untimely.

In addition to the procedural failing of defendants' motion, the motion also fails on the merits – except as regards their argument that plaintiff Urquhart's claims for false arrest and false imprisonment are time barred. Urquhart concedes this point. In light of this concession, the court shall grant summary judgment for defendants on these two claims only.

Defendants also argue that plaintiff Urquhart's malicious prosecution claim is time barred. The court rejects this argument. Urquhart's malicious prosecution claim is not time barred because this claim accrued when the Michigan Court of Appeals set aside her conviction, *see Heck v. Humphrey*, 512 U.S. 477, 484-86 (1994), and she commenced suit less than three years thereafter. Defendants do not challenge the timeliness of plaintiff Sykes' claims.

Defendants next argue that plaintiffs are estopped from relitigating the issue of

3

probable cause, an element of several of plaintiffs' claims. Defendants argue that because an independent determination of probable cause was made at the preliminary examination, plaintiffs are estopped from relitigating the issue of probable cause. The court rejects this argument. The Sixth Circuit has held that when defendant officers established probable cause in state court with false facts, or by omitting material facts, collateral estoppel does not bar a later civil claim because the issue is not the presence or absence of probable cause, but defendants' conduct in establishing probable cause. *See, e.g., Gregory v. City of Louisville*, 444 F.3d 725, 758 (6th Cir. 2006); *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003); *Hinchman v. Moore*, 312 F.3d 198, 202-04 (6th Cir. 2002); *Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001). Plaintiffs point to several false and misleading statements based upon factual discrepancies between the warrant request and the surveillance video,[2] and it will be for the jury to determine whether defendants presented false

---

[2]For example, the warrant request states that Holmes was seen on the surveillance video removing a moneybag from the safe and tossing it under the table towards plaintiffs. The next sentence states that Urquhart "was also observed to exit from under the table and place an item (possible [sic] the moneybag) into a trashcan." A jury could conclude that the surveillance video footage does not show Holmes throwing a moneybag under the table; furthermore, Urquhart went to the trashcan (apparently to vomit) before Holmes went to the safe. Also, the second moneybag was in the safe when the police arrived. The video shows plaintiffs in distress over the incident. The warrant request states that the police investigation relied on the video and statements from plaintiffs and Holmes to conclude that "no robbery took place," that the plaintiffs and Holmes "compire [sic] to commit larceny from the business" before entering the store and that they "divided the funds taken from the safe."

Notably, in reversing plaintiffs' convictions, the Michigan Court of Appeals stated that "there was no evidence, besides layers of impermissible inferences" built upon Holmes' gambling records to establish that the robbery was faked. *People v. Sykes*, 2004 WL 950129 at *3; *People v. Urquhart*, 2004 WL 950062 at *3. The Court of Appeals also noted that the police detective who testified at the criminal trial, defendant Anderson, had no factual basis or evidence for his belief that the plaintiffs and Holmes stowed a moneybag under the table and divided the money later.

The warrant request states that defendant Anderson was prepared to testify that Holmes gambled $23,515 in the three days following the incident, but it does not mention the existence of a letter from the Motor City legal counsel hedging about the accuracy of the gambling

4

facts, or omitted material facts, in the warrant request.

Defendants also move for summary judgment based on qualified immunity. Under the doctrine of qualified immunity, government officials performing discretionary functions are shielded from civil liability insofar as their conduct does not violate clearly established rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982). The court cannot grant summary judgment for defendants based on this defense because the facts are in dispute as to whether plaintiffs' constitutional rights were violated. Certainly, if plaintiffs succeed in proving that defendants supplied false information, or withheld material information, in connection with the warrant request, qualified immunity will be unavailable. *See Gregory, Vakilian, Hinchman, Darrah, supra.* The defense will likewise be unavailable if plaintiffs succeed in proving that defendants violated their right to a fair trial by withholding exculpatory evidence. *See Brady v. Maryland*, 373 U.S. 83, 87 (1964). It will be for the jury to say whether plaintiffs' allegations are true. But if the allegations are accepted, qualified immunity will be unavailable, as the constitutional rights at issue are clearly established.

Finally, defendants argue they are entitled to summary judgment on plaintiffs' § 1983 claims against the city. To hold a municipality liable for a constitutional violation under § 1983, a plaintiff must prove that the municipality's policy or custom caused the alleged injury. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate

---

records. *See* pltfs' Ex. 30. This letter states that the gambling information "is compiled primarily for marketing purposes; it is not compiled in a manner that ensures either accurate or full reporting of the . . . actual play (wins or losses) of a customer." *Id.* at 2 (emphasis in original). Clearly, this letter would have been of critical importance to defendants, as the case against them depended heavily on Holmes' alleged gambling activity shortly after the robbery.

5

indifference to the rights of the persons with whom the police come into contact." *Canton v. Harris*, 489 U.S. 378, 388 (1989). The deliberate indifference standard is also used in the failure to supervise context. *See Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).

Plaintiffs allege that the city "established a practice, policy, or custom of acquiescence in, inadequate training, monitoring, directing and/or supervision regarding unconstitutional conduct of its police officers," that the city "was on notice through its supervisory officials that the officers . . . would engage in the complained behavior given the improper training, customs, procedures, practices, and policies," and that the city's practice, policy or custom proximately caused the violation of their constitutional rights. Sykes' Am. Compl. ¶¶ 34-35; Urquhart's Am. Compl. ¶¶ 36-37. There is no heightened pleading requirement for a failure to train/supervise claim, and the language in the plaintiffs' complaints suffices. *See Fluellen v. United States Dep't of Justice Drug Enforcement Admin.*, 816 F. Supp. 1206, 1215 (E.D. Mich. 1993).

In support of their summary judgment motion as to this claim, defendants argue that plaintiffs lack evidence establishing any deliberately indifferent city policy, custom or practice. In response, plaintiffs indicate that they lack such evidence because defendants have failed to obey Magistrate Judge Whalen's order requiring them to respond to numerous discovery requests. Plaintiffs recently have filed a motion for sanctions [docket entry 89], based on this alleged disobedience, and that motion has been referred to Magistrate Judge Whalen. As noted above the instant summary judgment motion is untimely, and the court shall deny this aspect of the motion on

these grounds. Depending on the outcome of plaintiffs' motion,[3] defendants may have the opportunity to point out plaintiffs' alleged lack of evidence regarding this claim at trial.

IT IS ORDERED that defendants' motion for summary judgment is granted in part and denied in part as follows: the motion is granted as to plaintiff Urquhart's claims for false arrest and false imprisonment, but denied as to all else.

IT IS FURTHER ORDERED that plaintiffs' motion for leave to file a sur-reply brief is denied.

\_\_s/Bernard A. Friedman_____
BERNARD A. FRIEDMAN
CHIEF UNITED STATES DISTRICT JUDGE

Dated: August 29, 2007
        Detroit, Michigan

---

[3] The court notes that plaintiffs seek a default judgment against the city, or an order preventing the city from offering evidence on the claim against it, or an order establishing defendant's liability. If any such relief is granted, defendant may lose the opportunity to offer evidence regarding, or to argue, the issue of its alleged failure to train or supervise its officers.