UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| KIMBERLY SYKES, | Case No. 05-71199 |
| Plaintiff(s), | Honorable Nancy G. Edmunds |
| v. | |
| DERRICK ANDERSON, CAROL NICHOLS, MAURICE McCLURE, and CITY OF DETROIT, | |
| Defendant(s). | |

**AND**

| | |
|---|---|
| TEVYA GRACE URQUHART, | Case No. 05-73725 |
| Plaintiff(s), | Honorable Nancy G. Edmunds |
| v. | |
| DERRICK ANDERSON, CAROL NICHOLS, MAURICE McCLURE, and CITY OF DETROIT, | |
| Defendant(s). | |

**OPINION AND ORDER GRANTING DEFENDANT CITY OF DETROIT'S
MOTION FOR SUMMARY JUDGMENT**

This is a consolidated action.[1] Plaintiffs Kimberly Sykes and Tevya Grace Urquhart each filed an action against Defendants Derrick Anderson, Carol Nichols, Terrence Sims,

---

[1] For purposes of this opinion, all Docket references will be for case number 05-71199.

Patrick Jones, Arthur Copeland, Maurice McClure, and the City of Detroit ("the City").[2] This opinion addresses only Plaintiffs' claims against the City. Plaintiffs allege that the City is liable, pursuant to 42 U.S.C. § 1983, for various violations of their constitutional rights. This matter comes before the Court on the City's motion for summary judgment. For the reasons set forth below, the City's motion is GRANTED.

I.  **Facts**

On March 7, 2002, Sykes, Urquhart, and a third individual, Kimberly Holmes, allegedly were robbed at their place of employment in Detroit, Michigan. (Def.'s Mot. at 3; Pl.'s Resp. at 1.) When the police arrived on the scene, the three women reported that two masked men forced them into the back of the store. Sykes and Ms. Holmes were ordered to lie on the floor. Urquhart was forced at gunpoint to enter the store's safe and to retrieve and hand over one of the store's money bags. The two men allegedly fled with approximately $27,000. (Def.'s Mot. at 4; Pl.'s Resp. at 1.)

The police launched an investigation, during which they began to suspect that the three women may have been involved in the crime. (Def.'s Mot. at 5.) Based on these suspicions and on a subsequent investigation, Defendant Anderson sought a determination from the Wayne County Prosecutor's Office as to whether arrest warrants should be issued for the three women. (*Id.*) Anderson submitted an "Investigator's Report" and other evidence to Assistant Wayne County Prosecuting Attorney Rita H. Lewis, who reviewed the material and recommended that warrants should be issued. (*Id.*) The three women were charged with "Larceny by Conversion" and "False Report of a Felony." (*Id.*)

---

[2]Pursuant to a stipulation by all parties, Defendants Sims, Jones, and Copeland were dismissed from this lawsuit. (Docket Text # 77.)

The women were arrested on May 11, 2002. (*Id.* at 6.) A preliminary examination was held, and the court determined that probable cause existed to bind the women over for trial. (*Id.*) Ms. Holmes pleaded *nolo contendere*, and Sykes and Urquhart proceeded to trial. On October 10, 2002, both women were found guilty on both counts. Sykes was sentenced to three months in jail, three years' probation, and ordered to pay restitution. (*Id.*) Urquhart was sentenced to five months in jail on each count and given three years' probation. (*Id.*)

Plaintiffs' convictions were overturned by the Michigan Court of Appeals in *People v. Sykes,* No. 245079, 2004 WL 950129 (Mich. App. May 4, 2004), and *People v. Urquhart*, No. 246001, 2004 WL 950062 (Mich. App. May 4, 2004). The court found that the convictions were not supported by the evidence. In both cases, the court found "no evidence, beyond speculation, to support defendant[s'] conviction[s] of larceny by conversion." *Sykes*, 2004 WL 950129 at *2; *Urquhart*, 2004 WL 950062 at *2. As to the convictions for "False Report of a Felony," the court found "no evidence, besides . . . layers of impermissible inferences." *Sykes*, 2004 WL 950129 at *3; *Urquhart*, 2004 WL 950062 at *3.

In March 2005, Sykes filed suit in Wayne County Circuit Court; Defendants removed the action to federal court. (Def.'s Mot. at 7.) In September 2005, Urquhart filed suit in federal court. (*Id.*) In June 2006, all parties agreed to consolidate the cases. (Docket Text # 18.)[3] Plaintiffs' claims are essentially the same: their Fourth and Fourteenth Amendment rights were violated when the police officers involved in the investigation "pursued

---

[3]The case initially was assigned to the Honorable Bernard A. Friedman.

[Plaintiffs'] arrest and subsequent prosecution without any probable cause to believe that they had committed the crimes for which they were charged, and that they withheld critical exculpatory evidence in violation of the *Brady* rule." (Pl.'s Resp. at 4.) Plaintiffs charge that the City is liable because the officers acted "pursuant to municipal policy, practice, and custom." (*Id.*)

In June 2006, Defendants filed their first motion for summary judgment. (Docket Text # 19.) Because discovery had not yet commenced, the motion was "denied without prejudice to defendants' right to seek summary judgment after plaintiffs have had an opportunity to conduct full discovery." (Opinion and Order, Docket Text # 48 at 5.) Defendants filed a second motion for summary judgment on June 29, 2007. (Docket Text # 73.) Plaintiffs filed a joint response. (Docket Text # 81.) The motion was denied as to the City because it was filed after the motion cutoff date. (Opinion and Order, Docket Text # 99 at 6-7.) Defendants filed a motion for rehearing or reconsideration of the denial of their motion for summary judgment (Docket Text # 105), which was denied on September 13, 2007 (Docket Text # 109).

On November 6, 2007, the case was reassigned from Judge Friedman to this Court. (Docket Text # 117.) At a hearing on November 16, 2007, the Court instructed the parties that it would re-hear arguments on the City's motion for summary judgment. The City's motion is now before the Court.

## II. Summary Judgment Standard

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement

to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

### III. Analysis

Plaintiffs' claims against the City arise under 42 U.S.C. § 1983. To establish a § 1983 claim, Plaintiffs must show: 1) their constitutional rights were deprived, and 2) a person acting under color of state law subjected them or caused them to be subjected to the deprivation. *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). To hold a municipality, such as the City, liable under § 1983, Plaintiffs must make an additional showing: that their constitutional injury was inflicted by the "execution of a government's

policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). The City cannot be held vicariously liable under § 1983 for the actions of its employees; there is no *respondeat superior* liability for government entities under § 1983. *Id.* Thus, the City's motion is not precluded even though Judge Friedman previously denied Defendants' motion for summary judgment as to the individually named Defendants.

Plaintiffs argue the City is liable under § 1983 on two bases: the individually named Defendants were acting pursuant to the City's custom or policy when they violated Plaintiffs' constitutional rights, and the City failed properly to train or supervise its officers. The Court will address each claim in turn.

First, though, the Court will address Plaintiffs' argument that the City's failure to produce documents has prejudiced their ability to show a genuine issue of material fact as to municipal liability. In September 2006, Plaintiffs requested, among other things, the following documents from the City:

> All documentation, including, but not limited to, incident reports, investigations and dispositions pertaining to all citizen complaints, grievances, disciplinary actions, internal investigations, anything and everything in your possession pertaining to any and all claims against the Detroit Police Department or any individual Detroit Police Officer alleging malicious prosecution, false arrest, unlawful detention, based on inadequate or improper investigative practices, during the period 1997 to the present, inclusive.

(Plaintiffs' First Request for Production of Documents and Things, Docket Text # 56, Attachment # 2 at ¶ 19.) The City objected that the request was "overly broad and unduly burdensome." (Defendants' Response to Plaintiffs' First Request for Production of Documents and Things, Docket Text # 56, Attachment # 3 at ¶ 19.) Plaintiffs filed a

6

motion to compel. (Docket Text # 56.) Magistrate Judge Whalen granted the motion as to Request # 19, but limited the time period from 1997 to 2004. (Order Granting Plaintiffs' Motion to Compel, Docket Text # 59 at ¶ 4(b).)

The City responded by providing the affidavit of Police Investigator Ainsley Cromwell, who stated that the Court Order covered 8,833 citizen complaints and that 400 hours of manpower would be required to comply. (Docket Text # 89, Attachment # 13.) Furthermore, according to the City, the Order would require at least three hundred thousand sheets of paper to be copied. (Docket Text # 116 at 5.) Undeterred, Plaintiffs filed a motion for sanctions. (Docket Text # 89.) Magistrate Judge Whalen granted the motion with respect to the discovery issue and ordered that the jury be instructed "that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order." (Opinion and Order, Docket Text # 114 at 12.) The City objected to the magistrate judge's order. (Docket Text #116.) This Court heard the City's objection and deferred ruling on the issue until the instant motion is decided.

Plaintiffs' argument regarding the need for more discovery is to no avail. Plaintiffs have been provided full discovery as to the individually named Defendant officers. Judging by the volume of Plaintiffs' exhibits regarding these officers, discovery has been fairly extensive. As discussed below, however, the discovery to date provides no basis by which Plaintiffs can establish a § 1983 claim against the City. Furthermore, Plaintiffs have made no showing that additional discovery from the City would substantiate their claims. Accordingly, the Court will not permit Plaintiffs to continue to subject the City to exhaustive discovery requests in the mere hope that something,

7

somewhere might establish municipal liability. The Court, therefore, will decide the City's motion based on the discovery produced to date.

### A. Custom or Policy

Plaintiffs first argue that the City is liable under § 1983 because its "failure to track, monitor, and respond to complaints of police misconduct" constituted "a custom of tolerating constitutional violations." (Pl.'s Supp. Brief at 2.) To hold the City liable under § 1983, Plaintiffs must: "(1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005). A policy or custom need not be codified to serve as the basis for a claim under § 1983: "Although not authorized by written law, [discriminatory] practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 691. Additionally, "[a] municipal 'custom' may be established by proof of the knowledge of policymaking officials and their acquiescence in the established practice." *Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004).

Plaintiffs' "policy or custom" argument centers on the individually named Defendant officers' "documented histories of alleged misconduct, similar to the claims in this case, to which the City knowingly failed to respond." (*Id.* at 3.) In their supplemental brief, Plaintiffs lay out the employment and disciplinary history of Defendants Anderson and McClure.[4] To buttress their claim, Plaintiffs have submitted a

---

[4] The City has no documented citizen complaints against Defendants Nichols and Sims. (Pl.'s Resp. at 37 n.60.)

small tome of exhibits which, somewhat ironically, consists largely of documentary material related to the City's numerous investigations into citizen complaints.

### 1. Defendant Anderson

First, Plaintiffs detail the history of citizen complaints against Defendant Anderson. In the eleven years before the alleged robbery of Plaintiffs occurred, Anderson was the subject of eleven citizen complaints, which alleged twenty-one violations. (Pl.'s Supp. Brief, Ex. 4.) Of the twenty-one allegations, only three violations were found. (*Id.*) One such violation was found in response to a complaint filed in 2002. (Pl.'s Supp. Brief, Ex. 5.) After what appears to be a thorough investigation by the Office of the Chief Investigator (which resulted in a twenty-seven page report), Anderson was found to have acted improperly when he assigned himself to a case, due to his close relationship with the victim's father (who is also a police officer). (*Id.* at 25.) The report recommended that the citizen complaint be forwarded to the Chief of Police for appropriate action. (*Id.* at 26.) The incident also resulted in a civil suit against Anderson, which was settled. (Pl.'s Supp. Brief, Ex. 1 at 5.)

In a 2000 complaint investigation, Anderson was cleared of any wrongdoing in the underlying incident. (Pl.'s Supp. Brief, Ex. 5 at 28.) He was found to have acted improperly, however, for failing to respond to a "second directive for request of statements" in conjunction with the investigation. (*Id.* at 62.) Although Anderson ultimately supplied a complete set of answers to the first "request of statements," (*Id.* at 55.), his failure to reply to the second request constituted a "willful disobedience of rules or orders." (*Id.* at 62.)

Finally, Anderson was cited for "Improper Conduct - Search" based on a 1991 citizen complaint. (*Id.* at 78) In the remainder of citizen complaints against Anderson, he was found to have acted properly, the complaint was determined to be unfounded, or there was insufficient information to sustain the complaint.[5] (Pl.'s Supp. Brief, Ex. 4.)

Ultimately, Anderson was found to have acted improperly a total of three times in eleven years. He conducted an "improper search" in 1991, failed to respond to a statement request in 2000 (even though he had provided answers to all of the questions), and improperly assigned himself to a case in 2002. Although other allegations were made against Anderson, none were substantiated. Thus, contrary to Plaintiffs' position, Anderson's "history of misconduct" is not at all similar to the allegations in this case.

Plaintiffs' next contention regarding Anderson relates to the number of times he was the subject of an "Internal Affairs" investigation. According to Plaintiffs, Anderson was the subject of ten such investigations. This fact alone, considering that Anderson had a total of eleven citizen complaints filed against him, undercuts Plaintiffs' position that the City failed to respond to complaints of police misconduct. Moreover, Plaintiffs

---

[5]Plaintiffs' counsel, in their initial response (Docket Text # 81) and in their supplemental brief, suggest that a finding of "insufficient evidence" of a citizen complaint is equivalent to a finding of officer misconduct. The Court disagrees. A finding of insufficient evidence is exactly that - a conclusion that a complaint against an officer was not supported by the facts.

Even more troubling is counsel's practice of treating alleged conduct as established fact. For example, counsel argues that "Anderson *falsely told the complainant he was assigned to a different precinct from his actual assignment.* This put the City on further notice that Anderson fabricates and falsifies." (Pl.'s Supp. Brief at 4.)(emphasis original). The police investigation into the matter, however, concluded that "there is insufficient evidence to prove or refute the allegation." (Pl.'s Supp. Brief, Ex. 5 at 72.) The Court will not accept as true unsubstantiated complaints against Defendant officers.

state that the investigations found six instances of "improper conduct." A review of Plaintiffs' own exhibit, however, reveals only three instances of "improper conduct," and one finding of "neglect of duty." (Pl.'s Supp. Brief, Ex. 1 at 1-2.)

Finally, Plaintiffs contend that "there is no evidence of any disciplinary action or retraining from this history." (Pl.'s Supp. Brief at 5.) Again, based on Plaintiffs' own exhibit, this simply is not true. The exhibit shows that Anderson received a written reprimand in one instance, and was "assigned to walk a beat" for fifteen days in another. (Pl.'s Supp. Brief, Ex. 1 at 2.)

Based on the foregoing, the Court concludes that Anderson's complaint history is not sufficiently similar to the claims in this case so as to establish a policy of acquiescence by the City. Furthermore, Anderson was the subject of multiple internal investigations and was disciplined and retrained at least in some instances when he was found to have acted improperly. Accordingly, the City did not knowingly fail to respond to citizen complaints against Anderson.

### 2. Defendant McClure

As to Defendant McClure, prior to the alleged robbery, the City had received seven citizen complaints that alleged a total of seventeen violations. (Pl.'s Supp. Brief, Ex. 8.) Investigations determined that McClure acted improperly in three instances. In 1991, McClure was cited for "Neglect of Duty" - he was suspended for five days. (*Id.* at 2.) In 1993, he was cited for "Conduct Unbecoming an Officer" and was suspended for thirty days. (*Id.* at 1.) In 1987, McClure issued a ticket based on a misunderstanding of the relevant ordinance; the ticket was canceled and McClure was "reinstructed." (*Id.* at

11

2.) Based on this information, there simply is no merit in Plaintiffs' contention that the City failed to respond adequately to complaints against McClure.

The histories of Defendants Anderson and McClure do not establish that the City had a policy or custom of tolerating constitutional violations. As a result, Defendant's motion for summary judgment as to this claim is GRANTED.

### B. Failure to Train or Supervise

Plaintiffs also seek to hold the City liable for failure to train or supervise its officers. Regarding this type of claim, the Supreme Court has held:

> We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. . . . [A] municipality can be liable under § 1983 only where its policies are the moving force [behind] the constitutional violation. Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989)(citations and internal quotation marks omitted).

To prevail on such an inaction theory, Plaintiffs must establish: 1) the existence of a clear an persistent pattern of illegal activity; 2) notice or constructive notice on the part of the City; 3) the City's tacit approval of the unconstitutional conduct, such that its deliberate indifference in its failure to act can be said to amount to an official policy of inaction; and 4) that the City's custom was the "moving force" or direct causal link in the constitutional deprivation. *Doe v. Claiborne County, Tenn.,* 103 F.3d 495, 508 (6th Cir. 1996).

12

Plaintiffs posit that the City's deliberate indifference caused their constitutional injuries in two ways. First, the City allows officers to act as their own supervisors when preparing a Warrant Request. Second, the City has an inadequate system in place to track, coordinate, and monitor citizen complaints and lawsuits against its officers. The Court will address each issue in turn.

### 1. Officer Self-Supervision

Plaintiffs argue that the City's practice of allowing its officers to supervise their own Warrant Requests constitutes a "striking policy of non-supervision" that is sufficient to expose the City to municipal liability. (Pl.'s Supp. Brief at 7.) Ordinarily, an officer-prepared Warrant Request is reviewed and approved by a supervisor before it is sent to the prosecutor's office. (Pl.'s Supp. Brief, Ex. 15 at 163-65.) When an officer is the most senior supervisor on duty, however, that officer can approve his own Warrant Request. In that case, the officer signs the Request twice in two different capacities: as the requesting officer and as the supervising officer. (*Id.* at 166-67.)

Based on this policy, a juror reasonably could conclude that the City's "deliberate indifference in [its] failure to act can be said to amount to an official policy of inaction." *Doe,* 103 F.3d at 508. Nonetheless, Plaintiffs have failed to offer any evidence to establish the fourth factor of an inaction theory, that the City's custom "was the 'moving force' or direct causal link in the constitutional deprivation." *Id.* Indeed, the evidence in the record establishes that Plaintiffs cannot make the required showing for this factor.

After a Warrant Request is signed by a supervising officer, it is forwarded to the county prosecutor's office, along with the entire police file. (Def.'s Resp., Attachment # 3 at 12-13.) In this case, the Warrant Request was prepared by Defendant Anderson

13

and was forwarded to Assistant Wayne County Prosecuting Attorney Rita H. Lewis. (Def.'s Mot., Attachment # 6 at 3.) In a sworn affidavit, Ms. Lewis stated that when she receives an Investigator's Report (which is one of the officer-generated documents that accompanies a Warrant Request), she reviews all of the evidence submitted to her and makes an independent determination as to whether probable cause exists to recommend that a Warrant be issued. (*Id.*) Ms. Lewis does not rely at all on the Investigator's Report, but rather looks to the primary documentation to make her probable cause determination. (Def.'s Resp., Attachment # 3 at 34-35.) When Ms. Lewis disagrees with an officer's conclusion in the Investigator's Report, her opinion controls. (*Id.* at 58-59.)

If Ms. Lewis determines that there is probable cause to pursue a criminal prosecution, she then decides the appropriate charges to bring. (*Id.* at 14, 26.) After that, a complaint and warrant is prepared, signed by Ms. Lewis, and forwarded on to the court system. (*Id.* at 26, 28.) At that point, a judicial officer, usually a magistrate judge, must determine whether probable cause exists to issue the warrant.

Accordingly, even assuming that the City has an official policy of inaction, that policy is not the moving force behind any constitutional deprivations suffered by Plaintiffs. Once an officer prepares a Warrant Request, it is subject to two independent reviews before a warrant is issued, first by a prosecuting attorney and then by a judicial officer. As a result, even if the warrants in this case were not supported by probable cause, this infirmity was not due to the City's alleged policy of non-supervision. Plaintiffs' claims based on this argument therefore must fail.

### 2. The City's Record-Keeping System

Plaintiffs' second inaction argument is that the City's poor record-keeping system is to blame for their constitutional injuries. Plaintiffs contend that the City's policy of destroying citizen complaints after ten years raises the likelihood that long-term offenders will not be identified, that the City's "shoddy recordkeeping practices" are part and parcel of the City's policy of inadequate supervision, and that the City's failure to track lawsuits against its officers also contributes to the problem. In support of their argument, Plaintiffs cite a Department of Justice review of the City's response to citizen complaints. (Pl.'s Supp. Brief, Ex. 19.) The review concluded that "some aspects of [the City's] external complaint process have the potential to discourage the filing of complaints, and to impair their effective tracking and resolution." (*Id.* at 4.)

Plaintiffs' arguments regarding the City's recordkeeping are insufficient to subject the City to § 1983 liability. While the City destroyed the paper copy of citizen complaints after ten years, the City retained a record that contained the allegation and the investigative conclusion.[6] (Pl.'s Supp. Brief, Ex. 4; Ex. 18 at 161.) Accordingly, the City would be able to identify long-term offenders. Indeed, Plaintiffs use this very document to argue that Defendant officers "have documented histories of alleged misconduct, similar to the claims alleged in this case." (Pl.'s Supp. Brief at 3.)

Plaintiffs' claim regarding the City's "shoddy recordkeeping practices also must fail. To support this claim, Plaintiffs point out that Anderson's "Officer Information Report" only lists ten citizen complaints, when in fact an eleventh complaint was filed against Anderson in 1991. (Pl.'s Supp. Brief, Ex. 4; Ex. 5 at 79.) First, with respect to

---

[6]Starting in 2002, the City began to retain records for longer than ten years. (Pl.'s Supp. Brief, Ex. 18 at 160.)

the 1991 complaint, the Court notes that Anderson was found to have acted properly. (*Id.*) Second, although Plaintiffs contend that the "Officer Information Report" is the "official list of all citizen complaints against officers," they offer no evidence to support their assertion. (Pl.'s Supp. Brief at 4.) Finally, even if the Report were an official list, the omission of one complaint from over ten years before that resulted in a finding of proper conduct does not rise to the level of deliberate indifference necessary to impose liability on the City.

Plaintiffs' argument regarding the City's failure to track lawsuits is similarly unavailing. The City was aware of three lawsuits against Anderson. Plaintiffs discovered three additional suits, each of which was dismissed with prejudice. (Pl.'s Supp. Brief, Ex. 1 at 5.) Of the three suits disclosed by the City, one settled, and the disposition of the other two was unknown. As to McClure, the City was aware of one lawsuit, which was dismissed. (Pl.'s Supp. Brief, Ex. 8 at 4.) Plaintiffs discovered two additional suits. One was dismissed, and one was settled in 1992. (*Id.*)

Of the additional lawsuits uncovered by Plaintiffs, only one had an outcome even arguably adverse to the City, and that was in 1992. Accordingly, even if the City had tracked lawsuits against its officers, it would not have been alerted to a pattern of constitutional violations. Thus, Plaintiffs cannot illustrate a "causal link" between the City's failure to track lawsuits and Plaintiffs' alleged constitutional deprivations.

Finally, the Department of Justice recommended various improvements the City could make to its external complaint process. While the City's current processes may not be perfect, nothing in the Department of Justice's recommendations establishes that

the City was deliberately indifferent to the rights of its inhabitants or that the its processes were a "moving force" behind Plaintiffs' constitutional injuries.

In light of the above, Plaintiffs cannot establish a § 1983 against the City based on an inaction theory. Accordingly, the City's motion as to this claim is GRANTED.

## IV. Conclusion

For the foregoing reasons, the City's motion for summary judgment is GRANTED.


               s/Nancy G. Edmunds
               Nancy G. Edmunds
               United States District Judge

Dated: December 20, 2007

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 20, 2007, by electronic and/or ordinary mail.

               s/Carol A. Hemeyer
               Case Manager