UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY SYKES,

      Plaintiff,

vs.

DERRICK ANDERSON, CAROLYN
NICHOLS, and MAURICE McCLURE, Jointly
and Severally and in their Individual Capacities,
      Defendants.

Case No. 05-71199
Honorable Nancy G. Edmunds
Magistrate Judge R. Steven Whalen

_____/

| | |
|---|---|
| JULIE H. HURWITZ (P34720) | KRYSTAL A. CRITTENDON (P49981) |
| KATHLEEN BRUNER JAMES (P71374) | Attorney for Defendants |
| Goodman & Hurwitz, P.C. | CITY OF DETROIT |
| Attorney for Plaintiff Sykes | LAW DEPARTMENT |
| 733 St. Antoine, 3rd Floor | 1650 First National Building |
| Detroit, MI 48226 | Detroit, MI 48226 |
| (313) 963-5400 | (313) 237-3018 |

-AND-

TEVYA GRACE URQUHART,

      Plaintiff,

vs.

CITY OF DETROIT DETECTIVE SERGEANT
DERRICK ANDERSON, badge no. S-1262;
SERGEANT CAROLYN NICHOLS, badge no.
S-831; and OFFICER MAURICE McCLURE,
jointly and severally,
      Defendants.

Case No. 05-73725
Honorable Nancy G. Edmunds
Magistrate Judge R. Steven Whalen

_____/

| | |
|---|---|
| THOMAS M. LOEB (P25913) | KRYSTAL A. CRITTENDON (P49981) |
| Attorney for Plaintiff Urquhart | Attorney for Defendants |
| 32000 Northwestern Hwy Ste 170 | CITY OF DETROIT |
| Farmington Hills, MI 48334 | LAW DEPARTMENT |
| Phone: (248) 851-2020 | 1650 First National Building |
| | Detroit, MI 48226 |
| | (313) 237-3018 |

_____/

**PLAINTIFFS' JOINT PETITION FOR ATTORNEY'S FEES AND
COSTS PURSUANT TO LR 54.1.2 AND 42 U.S.C. §1988**

**PLAINTIFFS' JOINT PETITION FOR ATTORNEY'S FEES AND
COSTS PURSUANT TO LR 54.1.2 AND 42 U.S.C. §1988**

NOW COME Plaintiffs, KIMBERLY SYKES, by and through her attorney Julie H. Hurwitz,

and TEVYA URQUHART, by and through her attorney Thomas M. Loeb, pursuant to

F.R.Civ.P. 54(d)(2), Eastern District of Michigan Local Rule 54.1.2 and 42 U.S.C. §1988, and

timely move for an award of attorney fees and costs as follows: Plaintiff Sykes $995,530.85

($865,679 + 15% multiplier) in fees, $20,191.66 in costs **[See Exh. 5];** Plaintiff Urquhart

$267,541.75 ($232,645 + 15% multiplier) in fees and $2,320.23 in costs **[See Exh. 6].** the

amount of $, as fully set forth in the accompanying *Brief in Support.* In support of this *Petition,*

Plaintiffs state as follows:

1.   This matter arises from the violation of Plaintiffs' constitutional rights by the conduct of

Defendants Detroit Police Sgt. Derrick Anderson and Detroit Police Sgt. Carolyn Nichols, when

they falsely arrested and imprisoned Plaintiff Sykes, maliciously prosecuted both Plaintiffs and

deprived both Plaintiffs of their due process rights to a fair trial, by falsely charging them with a

crime of which they were the victims in 2002.

2.   This matter came up for trial in this Court on February 5, 2008, resulting in a finding of

liability under 42 U.S.C. §1983 and jury awards on February 25, 2008 in Plaintiffs'  favor, in the

amounts of :

    a.   $1,063,000 compensatory damages, jointly and severally, to Plaintiff Sykes;

    b.   $1,025,000 compensatory damages, jointly and severally, to Plaintiff Urquhart;

    c.   $150,000 punitive damages to Plaintiff Sykes against Defendant Anderson;

    d.   $100,000 punitive damages to Plaintiff Sykes against Defendant Nichols;

    e.   $150,000 punitive damages to Plaintiff Urquhart against Defendant Anderson; and

2

f.    $100,000 punitive damages to Plaintiff Urquhart against Defendant Nichols.

3.   As a result of the outcome of this trial, Plaintiffs are each prevailing parties within the meaning of 42 U.S.C. §1988.

4.    The Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988, authorizes an award of attorney's fees and litigation costs to the "prevailing party" in this civil rights action.

5.   The United States Supreme Court has offered a broad definition of "prevailing party" in which a civil rights plaintiff is considered prevailing "if they succeed on any significant issue in litigation which achieves some of the benefit the party sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoting *Nadeau v. Helgemore*, 581 F.2d 275, 278 (1st Cir. 1978)).

6.   Filed with this *Joint Petition for Attorney's Fees and Costs*, as required by Local Rule 54.1.2 and 42 U.S.C. §1988, and incorporated herein by reference, are:

    a.    Affidavit of Attorney Thomas M. Loeb **[Exh. 1]**

    b.   Affidavit of Attorney Julie H. Hurwitz **[Exh.2]**

    c.   Affidavits of Attorneys Kathryn Bruner James & Kathleen Kalahar **[Exhs. 3 & 4]**

    d.   Summaries of contemporaneous time records and costs incurred by the law firms of Julie H. Hurwitz, P.C., Goodman & Hurwitz, P.C. and Thomas M. Loeb **[Exhs. 5 & 6];**

    e.   Supporting Affidavits of Attorneys James K. Robinson, Richard A. Soble, Hugh M. Davis and Amos E. Williams **[Exhs. 7-10].**

7.    These Affidavits and supporting documents address the current market rates for attorneys in the relevant community with experience comparable to Plaintiffs' attorneys, and establish that the hourly rates the Plaintiffs have suggested to the Court as appropriate are the actual current billing rates of Plaintiffs' counsel when representing paying clients, and that these rates are reasonable given the experience of counsel, the particular challenges of this case, and

the degree of success attained by Plaintiffs in this action.

8. The summaries of contemporaneous time records and costs incurred **[Exhs. 5 & 6]** set out in detail the number of hours spent on each aspect of the case and the actual costs incurred by counsel and their respective firms in prosecuting this case.

WHEREFORE, the Plaintiff respectfully requests that this *Petition* be granted and that the Court enter an Order awarding to Plaintiff Kimberly Sykes the amount of $995,530.85 in attorney fees and $20,191.66 in costs, and awarding to Plaintiff Tevya Urquhart the amount of $267,541.75  in attorney fees and $2,320.23 in costs.   Plaintiffs further rely on the attached *Brief in Support of Joint Petition for Attorney Fees and Costs* in support of said *Petition.*

Respectfully Submitted,

GOODMAN & HURWITZ, P.C.                THOMAS M. LOEB

By: s/Julie H. Hurwitz                    By: s/with consent of Thomas M. Loeb

| | |
|---|---|
| Julie H. Hurwitz P34720<br>Kathryn Bruner James P71374<br>Attorneys for Plaintiff Sykes, Case #05-71199<br>1394 E. Jefferson Ave.<br>Detroit, MI  48207<br>(313) 567-6170<br>jhurwitz@goodmanhurwitz.com | THOMAS M. LOEB P25913<br>Attorney for Plaintiff Urquhart, Case #05-73725<br>32000 Northwestern Hwy Ste 170<br>Farmington Hills, MI 48334<br>Phone: (248) 851-2020<br>tmloeb1@mich.com |

Dated:  July 23, 2008

4

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS

<u>Page</u>

Question Presented……………………………………………………..……………………...i

Controlling Authorities…………………………………………………………………………i

Table of Authorities ……………………………………………………………………...iii


I.      Introduction …………………………………...………………………………1


II.     Legal Argument… ……………………………….……………………...…………3


A.  PLAINTIFFS ARE THE PREVAILING PARTIES, ENTITLING
    THEM TO ATTORNEY'S FEES AND COSTS…………............3


B.  THE ATTORNEY FEES REQUESTED BY PLAINTIFFS ARE
    REASONABLE AND SHOULD BE APPROVED………………4


1.  <u>Degree of Success Obtained</u>……………….…………..5

2.  <u>The Novelty/Difficulty, Skill Required, and Undesirability
    of the case</u>………………. …………………………..7

3.  <u>The Preclusion of Employment Due to Acceptance of the
    Case</u>…………….....................................8


4.  <u>Whether the Fee is Contingent or Fixed</u>…………………..8


5.  <u>The Amount Involved and Results Obtained</u>…………...9


6.  <u>The Experience, Reputation, and Ability of the Attorneys</u>.9


a.  Thomas Loeb………………………………………...10

b.  Julie Hurwitz …………………………………...11

   c. Kathryn Bruner James…………………………………12

   d. Kathleen Kalahar……………………………………12

  7. <u>Awards in Similar Cases and Customary Hourly Rates for</u>
   <u>Lawyers with Similar Skills and Experience</u>……………13

C. THE PARALEGAL/LAW STUDENT FEES REFLECT
  REASONABLE RATES AND TIME SPENT ON THE
  LITIGATION……………………………………………………14

   a. Gary Gant: Paralegal, Goodman & Hurwitz, P.C.……15

   b. Kara Sullivan: Law Grad/Paralegal, Goodman &
    Hurwitz, P.C…………………………………………15

   c. Melanie Elturk: Law Student Clerk, Wayne State
    University Law School………………………………15

   d. Caryn Smith: Law Student Clerk, University of
    Michigan Law School………………………………16

D. PLAINTIFFS' TIME RECORDS REFLECT A REASONABLE
  EXPENDITURE OF TIME………………………………………...16

E. THE FACT THAT PLAINTIFFS' CASES WERE SO HOTLY
  CONTESTED BY THE DEFENSE RAISED THE TOTAL
  HOURS TO MORE THAN THEY OTHERWISE MIGHT HAVE
  BEEN……………………………………………………………18

F. UPWARD ADJUSTMENT OF THE LEAD PLAINTIFFS'
  COUNSELS FEES IS APPROPRIATE IN THIS CASE………..19

G. PLAINTIFFS ARE ENTITLED TO FEES FOR TIME SPENT ON
  UNSUCCESSFUL CLAIMS, AS SUBSTANTIALLY RELATED
  TO THE SUCCESSFUL CLAIMS……………………………...20

  1. <u>However, Plaintiffs Will Reduce Their Fee Request By Ten</u>
   <u>Percent of The Lodestar Amount For The Time Spent Only</u>
   <u>on Their Unsuccessful <i>Monell</i> Claim</u>……………………23

   a. Hurwitz…………………………………………24

ii

        b.  James……………………………………………24

        c.  Gant………………………………………………24

        d.  Kalahar…………………………………………24

H.  CONSULTATION WITH CO-COUNSEL AND WITH
COUNSEL FOR OTHER PLAINTIFF IS NOT DUPLICATIVE
AND DESERVES TO BE FULLY COMPENSATED…………25

I.  PLAINTIFFS ARE ENTITLED TO COMPENSATION FOR THE
TIME SPENT PREPARING THIS PETITION FOR FEES…….26

J.  PLAINTIFFS ARE ENTITLED TO COSTS……………………26

      1.  Costs of Copying and Postage………………………………27

      2.  Investigation Costs………………………………………27

      3.  Travel Expenses…………………………………….…...27

K.  CONCLUSION …………………………………………………27

## <u>BRIEF IN SUPPORT OF MOTION FOR ATTORNEY'S FEES</u>

### <u>Question Presented</u>

ARE PLAINTIFFS ENTITLED TO AWARD OF ATTORNEYS' IN FEES FOR OBTAINING

A FAVORABLE JURY VERDICT IN THIS 42 U.S.C. § 1988 ACTION?

**Plaintiffs' Answer: YES**

ARE PLAINTIFFS ENTITLED TO A MULTIPLIER UNDER THE JOHNSON FACTORS

AND THE EXTRAORDINARY RESULT OBTAINED?

**Plaintiffs' Answer: YES**


### <u>Most Appropriate Authority</u>


*Blum v. Stenson*, 465 U.S. 886 (1984).

*Hensley v. Eckerhart*, 461 U.S. 424 (1983).

*McConaha v. Reynoldsburg,* 2008 WL 2697310 (S.D. Ohio July 7, 2008).

*Riverside v. Rivera*, 477 U.S. 561 (1986).

*Thurman v. Yellow Freight Systems, Inc.,* 90 F.3d 1160 (6th Cir. 1996).

42 U.S.C. §1988.

Fed.R.Civ.P.54

Local Rule 54.1.2

# Table of Authorities

## Cases

*Adcock-Ladd v. Sec'y of Treasury,* 227 F.3d 343 (6th Cir. 2004) ................................................ 13

*Barnes v. Cincinnati, 401* F.3d 729 (6th Cir. 2005) ........................................................... 19, 20, 22

*Baskin Robbins v. Livonia Ice Cream*, No. 07-CV-10987, 2007 WL 4181422 (E.D. Mich. Nov. 27, 2007) ................................................................................................................................ 15

*Beazer v. New York City Transit Authority*, 558 F.2d 97 (2d Cir. 1977), .................................. 27

*Blum v. Stenson*, 465 U.S. 886 (1984) ......................................................................... 9, 13, 14

*Bond v. Stanton*, 630 F.2d 1231 (7th Cir. 1980) .......................................................................... 27

*Brack v. Shoney's Inc.*, 2004 WL 2806495 (W.D. Tenn. June 29, 2004) ................................... 26

*Brotherton v. Cleveland* 141 F.Supp.2d 907 (S.D. Ohio 2001) .............................................. 20

*Bryant v.Nighbert*, No. Civ.A.03-183, 2005 WL 2234636 (E.D.Ky. Sept. 14, 2005) ........... 22, 23

*Cabrales v. County of Los Angeles*, 935 F.2d 1050 (9th Cir. 1991) ......................................... 24

*Chouinard v. Kindercare Learning Center, Inc.* No. 1-04-0081, 2008 WL 913322 (M.D. Tenn. March 31, 2008) ....................................................................................................................... 5

*Citizens Ins. Co. of America v. KIC Chemicals Inc.*, 2007 WL 2902213 (W.D. Mich. Oct. 1, 2007) ........ 26

*Coulter v. Tennessee*, 805 F.d2 146 (6th Cir. 1986) ................................................................ 27

*Doe ex rel. Doe v. Keala*, 361 F.Supp.2d 1171 (D.Hawai'i 2005) .......................................... 27

*Erickson v. City of Topeka*, 239 F.Supp.2d 1202 (D.Kan.2002) ............................................ 27

*Fair Housing Advocates Association v. Terrace Plaza Apartments*, 2007 WL 445477 (S.D. Ohio Feb. 6, 2007) ............................................................................................................................... 20

*Farrar v. Hobby*, 506 U.S. 103 (1992) ................................................................................ 4, 6

*Gray v. New England Tel. and Tel. Co.*, 792 F.2d 251 (1st Cir. 1986) ..................................... 6

*Hadix v. Johnson,* 65 F.3d 532 (6th Cir.1995) ...................................................................... 13

*Hance v. Norfolk Southern Railway*, No. 3:04-CV-160, 2007 WL 3046355 (E.D. Tenn. Oct. 16, 2007).. 27

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) ................................................................. 27

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................................................ 4, 5, 6, 21

*Hollowell v. Gravett*, 723 F.Supp. 107 (E.D. Ark. 1989) ....................................................... 20

*Homans v. City of Albuquerque* 264 F.Supp.2d 972 (D.N.M. 2003)............................................................28

*Hudson v. Michigan*, 126 S.Ct. 2159 (2006) ...................................................................................................6

*Imwalle v. Reliance Med. Prods.*, 515 F.3d 531 (6th Cir. 2008) ...................................................................4

*In re Optical Corp. of America Inc.*, 157 BR 823 (Bkrtcy. W.D. Ky. 1993).............................................16

*Jaffee v. Redmond*, 142 F.3d 409 (7th Cir. 1998) .......................................................................................24

*Johnson v. Georgia Hwy.*, 488 F.2d 714 (5th Cir 1974) ..............................................................................5

*Knop v. Johnson*, 712 F. Supp. 571 (W.D. Mich. 1989)............................................................................26

*Kurowski v. Krajewski*, 848 F.2d 767 (7th Cir.), *cert. denied*, 488 U.S. 926 (1988).................................24

*McConaha v. Reynoldsburg,* 2008 WL 2697310 (S.D. Ohio July 7, 2008) ..............................4, 15, 22, 25

*McHugh v. Olympia Entertainment Inc.*, 37 Fed. Appx. 730 (6th Cir. 2002)............................................15

*Morris v. Eversley*, 343 F.Supp.2d 234 (S.D.N.Y. 2004) ..........................................................................15

*Northcross v. City of Memphis Schools*, 611 F.2d 624 ...............................................................................27

*People Who Care v. Rockford Board of Ed.*, 90 F.3d 1307 (7th Cir. 1996) ...............................................24

*Phelan v. Bell*, 8 F.3d 369 (6th Cir. 1993) ...................................................................................................21

*Riverside v. Rivera*, 477 U.S. 561 (1986) ......................................................................................4, 5, 19, 22

*Robinson v. Harvey*, 489 F.3d 864 (7th Cir. 2007) ........................................................................................6

*Shields v. Government Employees Hosp. Association Inc.*, No 1:03-cv-395, 2008 WL 1745617 (W.D. Mich. Apr. 14, 2008).......................................................................................................................................27

*Singleton v. Smith*, 241 F.3d 534 (6th Cir. 2001)...........................................................................................4

*South Rothschild Liquor Mart, Inc. v. Kozubowski*, 775 F.Supp. 1129 (N.D. Ill. 1991) ...........................24

*Taylor v. Currie*, 743 N.W.2d 571 (Mich. App. 2007) ...............................................................................14

*Thurman v. Yellow Freight Systems, Inc.,* 90 F.3d 1160 (6th Cir. 1996)..............................................21, 22

*Wayne v. Village of Sebring*, 36 F.3d 517 (6th Cir. 1994). .........................................................................15

*Wolfel v. Morris,* 972 F.2d 712 (6th Cir. 1992) ..............................................................................................5

*Woolridge v. Marlene Industries Corp.*, 898 F.2d 1169 (6th Cir. 1990) ....................................................22

**Statutes**

42 U.S.C. §1988...................................................................................................................................................3

**Rules**

Fed.R.Civ.P.54 ................................................................................................................................. 3

Local Rule 54.1.2 ............................................................................................................................ 3

## I.       Introduction

Plaintiffs, KIMBERLY SYKES and TEVYA URQUHART, jointly petition this Court, pursuant to 42 U.S.C. §1988, Fed.R.Civ.Pro. 54 and Local Rule 54.1.2, for an Order granting attorney's fees and costs in their respective consolidated cases.  This Petition follows the 3-week trial, from February 5-25, 2008, which resulted in a consolidated $2.588 million §1983 jury verdict for both Plaintiffs in their separate consolidated causes of action against Defendants Anderson and Nichols on all of their claims.

Plaintiffs Sykes and Urquhart were each employed at a Sprint store in Detroit at the time of the incidents giving rise to this litigation.  On March 7, 2002, the store was robbed, and Plaintiffs were wrongfully charged with the crime, fired from their jobs, convicted in October 2002, and imprisoned for months, based on fabricated information contained in the Investigator's Report/Warrant Request, the withholding of exculpatory evidence, and false and misleading testimony at both their preliminary exam and criminal trial, all committed by Defendants Anderson and Nichols. In May 2004, the Michigan Court of Appeals unanimously vacated those convictions, and on March 8 and September 29, 2005, respectively, Plaintiffs Sykes and Urquhart filed separate §1983 actions, alleging the violation of their Constitutional rights under the 4th and 14th Amendments.  Their cases were consolidated on June 19, 2006. **[Sykes Doc. #18]**[1]

Over the next two years, Plaintiffs engaged in extensive discovery and these individual Defendants filed and lost several summary judgment motions.[2] **[Sykes Docs. #'s 19, 73, 105, 133]** Plaintiffs had originally also named Detroit Police Officers Maurice McClure, Patrick Jones, Arthur Copeland and Terrence Sims as individual defendants and the City of Detroit as a

---

[1] Unless otherwise noted, all references to the Docket entries in this Brief shall be to the Document numbers from the *Sykes* file, Case. No. 05-71199.

[2] It is noteworthy that there are 195 Docket entries in the *Sykes* file [Case No. 05-71199] and 170 Docket entries in the *Urquhart* file [Case No. 05-73725].

municipal defendant.  After preliminary discovery and the depositions of Defendants Jones,

Copeland and Sims, on July 23, 2007, both Plaintiffs stipulated to voluntarily dismiss those

individual defendants from their cases. **[Doc. #77]** With respect to Defendant City of Detroit,

Plaintiffs alleged that their Constitutional rights had been violated pursuant to the municipality's

customs, policies and practices.  The City filed two separate summary judgment motions

challenging this claim, both of which, after extensive briefing, were fully denied by Judge Bernard

Friedman. **[Doc. #'s 48, 99, & 109]** After this case was re-assigned to this Court, in November

2007,and less than two months prior to trial, this Court invited Defendant City, *sua sponte*, to re-

file its summary judgment motion, which was ultimately granted on December 20, 2007, **[Doc**

**#132]**, leaving only individual Defendants Anderson, Nichols and McClure in the case at time of

trial.

Prior to trial, Plaintiffs attempted several times to engage in meaningful settlement

negotiations, including the preparation of comprehensive Settlement Statements for two Magistrate

Judges[3], and offers to participate in various forms of alternative dispute resolution (mediation,

facilitation, arbitration, etc.), all to no avail. Defendants, through their counsel, were never willing

to put any settlement offer on the table.  Defendants' consistent refusal to engage in meaningful

pretrial settlement discussion underscores the uphill nature of Plaintiffs' endeavors, and explains in

part the voluminous hours that had to be expended by their counsel.

The civil trial began on February 5, 2008 during which time the jury heard testimony from 24

witnesses, including two highly respected well-credentialed experts, reviewed more than 30

exhibits and on February 25, 2008, rendered a verdict for Plaintiffs on all of their constitutional

---

[3] It should be noted that when both Judges Friedman and Edmunds suggested the possibility of settlement conferences with Magistrates Whalen and Pepe, respectively, Plaintiffs' counsel took this effort seriously and expended many hours preparing meaningful Settlement Statements and then attending each settlement conference, (one in Ann Arbor), with Plaintiff Urquhart driving down from Flint.  When Defendants refused to even present any counter-offer to the good faith first demands presented by Plaintiffs, it became acutely clear that there could be no settlement discussions of these cases.

claims against Defendants Anderson and Nichols, and found Defendant McClure.  The jury awarded compensatory damages in the amounts of $1,025,000 to Urquhart and $1,063,000 to Sykes, and punitive damages against Defendant Anderson in the amount of $150,000 to each Plaintiff (total $300,000), and against Nichols in the amount of $100,000 to each Plaintiff (total $200,000). It found no cause of action in favor of Defendant Maurice McClure. On March 20, 2008, the Court entered judgments against Defendants Anderson and Nichols, and no cause of action for Defendant McClure.  **[Sykes Doc. # 177; Urquhart Doc. # 168]**[4]

The jury found in Plaintiffs' favor on all of their constitutional claims, to wit: violation of Sykes' Fourth Amendment rights for false arrest; violation of both Plaintiffs' Fourth Amendment rights to be free from unreasonable seizure in the form of malicious prosecution; and, violation of both Plaintiffs' Fourteenth Amendment due process rights to a fair trial for Defendants' withholding exculpatory evidence.  Thus, Plaintiffs are undoubtedly the "prevailing parties" as defined by the courts' interpretation of 42 U.S.C. §1988. This achievement came only after years of hard work -- extensive of discovery, multiple experts, extensive summary judgment briefing, and a full 3-week trial on the merits.  As such, Plaintiffs herein are entitled to and request that this Court award their requested attorney's fees and costs, pursuant to 42 U.S.C. §1988, Fed.R.Civ.P.54 and Local Rule 54.1.2.

## II.   LEGAL ARGUMENT

### A.   PLAINTIFFS ARE THE PREVAILING PARTIES, ENTITLING THEM TO ATTORNEY'S FEES AND COSTS

42 U.S.C. § 1988, states in pertinent part:

> …in any action or proceeding to enforce a provision of section… 1983… of this title, … the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs…"

---

[4] On July 14, 2008, an Amended/Corrected Judgment was entered, to correct procedural and clerical errors in the original Judgment. **[Sykes Doc. #195; Urquhart Doc. # 170]** This does not change the effective date of the original Judgment.

It is by now axiomatic that the purpose of §1988 "…is to ensure 'effective access to the judicial process' for persons with civil rights grievances…" by awarding attorney's fees when constitutional rights are vindicated. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting S.Rep.No. 94-1558, p.1 (1976).

Courts are given considerable latitude, within reasonable limitations, in determining the amount of attorney fees to award to a prevailing party:

> The trial court's exercise of discretion is entitled to substantial deference because the rationale for the award is predominately fact-driven. *Wilson-Simmons v. Lake County Sheriff's Dep't*, 207 F.3d 818, 823 (6th Cir. 2000). This deference 'is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.' *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). 'A district court abuses its discretion when it relies upon clearly erroneous factual findings, applies the law improperly, or uses an erroneous legal standard.' *Wikol v. Birmingham Pub. Schs. Bd. of Educ.*, 360 F.3d 604, 611 (6th Cir. 2004).

*Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 551 (6th Cir. 2008) (cited in *McConaha v. Reynoldsburg*, 2008 WL 2697310 (S.D. Ohio July 7, 2008)); *See also, Singleton v. Smith*, 241 F.3d 534, 538 (6th Cir. 2001).

There is no doubt that as a result of this case, the Plaintiffs' constitutional rights were vindicated and they are "prevailing parties" within the meaning of this statute. *Farrar v. Hobby*, 506 U.S. 103 (1992); *Hensley*, 461 U.S. 424; *Riverside v. Rivera*, 477 U.S. 561, 578 (1986). The Supreme Court has held that plaintiffs are legally the prevailing party when they receive a verdict in their favor, "on any significant issue in litigation which achieves some of the benefits the parties sought in bringing the suit," *Hensley, supra* at 433, and which materially alters the relationship between the parties. *Farrar*, 506 U.S. at 111-112.

Plaintiffs in this case fully achieved the benefits sought in bringing the suit. They were found by a jury of their peers to have been wrongly arrested, prosecuted, convicted and imprisoned, all in violation of their constitutional rights, and they were awarded substantial damages, based on the jury finding in the Plaintiffs' favor on every one of their Constitutional

4

claims, albeit not against every one of the Defendants.  They are therefore entitled to a full award of attorney's fees under §1988.

### B.   THE ATTORNEY FEES REQUESTED BY PLAINTIFFS ARE REASONABLE AND SHOULD BE APPROVED

Under familiar "lodestar" principles, the amount of the fee award is calculated by multiplying reasonable hours times reasonable hourly rate.  *Hensley,* 461 U.S. at 433; *Rivera,* 477 U.S. at 568; *Wolfel v. Morris,* 972 F.2d 712, 715 (6th Cir. 1992); *Chouinard v. Kindercare Learning Center, Inc.* No. 1-04-0081, 2008 WL 913322 (M.D. Tenn. March 31, 2008).

This "lodestar" calculation is "…presumed to be the reasonable fee contemplated by §1988." *Rivera,* 477 U.S. at 568; *Wolfel,* 972 F.2d at 715.  To determine the reasonableness of attorney fees requested by prevailing parties, the Supreme Court has instructed courts to conduct a case-specific analysis, taking into consideration the twelve factors first set forth in *Johnson v. Georgia Highway*, 488 F.2d 714 (5th Cir. 1974), to wit:

> (1) the time/labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is contingent or fixed; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases.

*Hensley,* 461 U.S. at 430 n.3, (citing *Johnson, supra* at 717-719).

The *Johnson* factors[5] have now become part of the settled law of lodestar analysis under both Supreme Court and Sixth Circuit case law. *Chouinard,* 2008 WL 913322 (M.D. Tenn. March 31, 2008).  Applied here, consideration of the *Johnson* factors clearly supports an award of the attorney's fees requested.

### 1.    Degree of Success Obtained

---

[5] These 12 factors are routinely referred to as the "*Johnson* factors" and will be so referred to herein.

The Supreme Court has identified "the degree of success obtained" as the most critical of the *Johnson* factors in deciding the question of attorney's fees awards. *Farrar,* 506 U.S. at 114; *Hensley*, 461 U.S. at 436.  In this case, Plaintiffs obtained a complete degree of success – indeed, the total amount awarded by the jury exceeded by more than $500,000 the amount that the Plaintiffs would have settled their claims for immediately preceding the trial.

This damage award reflects not only the success of the individual claims brought by Plaintiffs, but the success of their attorneys in their secondary role as private attorneys general for the citizens of Detroit. *Gray v. New England Tel. and Tel. Co.*, 792 F.2d 251 (1st Cir. 1986). Moreover, the success of this suit cannot be measured *solely* by the raw number of dollars and cents awarded to the Plaintiffs, (although that factor alone would be sufficient here). One must also consider the service provided to the community at large in holding these officers accountable for their inexcusable actions, in the face of a defense theory that continued to falsely accuse these innocent women of the very criminal acts of which they have been exonerated.

In *Robinson v. Harvey*, 489 F.3d 864, 872 (7th Cir. 2007), a §1983 malicious prosecution/excessive force case resulting in a $275,000 jury award, the 7th Circuit upheld an award of more than $500,000 in attorney's fees, holding that the prevailing plaintiff's success "...serves the public interest by exposing to light disturbing police malfeasance...that will presumably help to deter future constitutional violations by the City's officers.  *These achievements are anything but minimal." Id.* at 872. (Emphasis added).[6]  Similarly, in this case, there is no doubt that the sizable jury verdict attracted public attention and exposed to light a similar pattern of police misconduct within the Detroit Police Department. **[Exh. 11, Press**

---

[6] This same sentiment is expressed in *Hudson v. Michigan*, 126 S.Ct. 2159, 2168 (2006), a criminal case in which Justice Scalia justifies the denial of a criminal defendant's motion to suppress evidence obtained from an unconstitutional violation of the "knock and announce rule" by opining that the potential officer liability and award of attorney's fees in civil rights cases arising from unconstitutional searches would act as a necessary deterrent against egregious violations of the Constitutional rights of citizens by the police.

Coverage of the Verdict]

Reviewing the various counts tried before the jury in this case, they all center on the same core of the misleading statements made by police and the corruption involved in the issuance of the arrest warrants based on falsified evidence. While a number of legal theories have been involved in this litigation, they all revolved around one unitary sequence of events. As with many civil rights cases, attempts to divide hours spent litigating these claims into discrete causes of action would be futile, as most time was spent on the litigation generally as a whole.

When one considers the psychological stress and economic hardship these women each have endured, the theory of the defense at trial, the compensatory and punitive damages awarded and the fact that, as a result of this action, others will, hopefully, not be subjected to the same unfair treatment, it becomes close to impossible to view this result as anything other than a significant and impressive victory for Plaintiffs.

### 2. The Novelty/Difficulty, Skill Required and Undesirability of the Case

This case presented several complex constitutional and evidentiary issues, e.g.: the doctrine of "collateral estoppel" and applicable standard of liability under §1983 for malicious prosecution; the basis of 14th amendment liability for withholding exculpatory evidence under the *Brady* doctrine and the unique factual history of how critical evidence was withheld that was so deeply buried that Plaintiffs' counsel only discovered it long after their respective clients' criminal convictions had been overturned; and the evidence needed to overcome the presumption of probable cause in the face of sworn testimony from the warrant prosecutor and the municipal criminal judge's initial finding of probable cause at the preliminary exam. All of these issues were among the sources of intensive discovery efforts and multiple pretrial summary judgment motions, responses to which required hundreds of hours of attorney and paralegal time and resulted in voluminous documentation.

Plaintiffs' counsel have collectively spent over 4,500[7] hours on this case, including time spent on investigation, discovery, the actual trial, and addressing the numerous legal/constitutional and evidentiary issues brought up by opposing counsel. **[Exhs. 5 & 6]**  And, regardless of the overwhelming evidence of Defendants' liability, defense counsel conceded nothing – not even the fact of Plaintiffs' obvious innocence -- forcing Plaintiffs' counsel to prove every single fact at trial. Counsel thus spent hundreds of hours not only proving Defendants' culpability, but they had to prove again that the Plaintiffs were not the criminals they were so wrongfully accused of being.

Added to the pretrial work and the time necessary to try this case, the factual issues themselves made the cases particularly difficult to litigate. Juries are wont to believe in the honesty and integrity of police officers and the judicial system. In representing the Plaintiffs, counsel had to overcome this predisposition in the opposition's favor. Plaintiffs' counsel not only had to convince the jury that the officers in question violated the law, but also that they acted maliciously and that Assistant Prosecuting Attorney Lewis' sworn testimony was inherently incredible. These hurdles were further complicated by a defense strategy that continued to accuse the Plaintiffs of the underlying crime.  In spite of this, Plaintiffs' attorneys continued to try the case and pursue the vindication and damages to which their clients were entitled.

Moreover, after the trial, counsel have spent hundreds of additional hours responding to and preparing for the hearing on *Defendants' Renewed Motion for Judgment as a Matter of Law*, (a motion that bordered on being frivolous).  All of these factors made for an understandably difficult, indeed undesirable, case as conceptualized in *Hensley,* and supports an award of attorney's fees at the upper end of the range with the requested upward adjustment of 1.15.

    **3.**    **The Preclusion of Employment Due to Acceptance of the Case**

---

[7] Attorney Hurwitz has documented over 1,615 hours of her own **[Exh. 5, p. \*\*];** her firm has documented a total of over 3,800 hours **[Exh. 5, p. \*\*].**  Attorney Loeb has documented over 600 hours of his own, and his firm has nearly 700 total hours. **[Exh. 6, p.\*\*]**

All told, Plaintiffs' attorney spent 4,500 hours over the course of four years litigating this case. **[Exhs. 5 &6]**  This time, all itemized in detail in Exhibits 5 and 6, has included: deposing witnesses; reviewing criminal transcripts; obtaining and reviewing court files, prosecutors' files, police records, medical records, employment records; meeting with witnesses, clients and counsel; investigation; discovery litigation; court hearings; summarizing records; drafting and filing motions and briefs; legal research; and, of course, trying the case.  The trial itself demanded the full-time resources and personnel of Plaintiffs' counsel's respective offices for the month leading up to the trial and through the 3-week long trial.  This substantial commitment necessarily prevented Plaintiffs' attorneys from accepting other potential clients during the course of this litigation.

### 4.      Whether the Fee is Contingent or Fixed

Unlike defense counsel, who are guaranteed payment regardless of the final outcome, Plaintiffs' attorneys assumed a very real risk that, if unsuccessful, they would walk away with no compensation for all their time and effort. The Supreme Court has ruled in favor of an award reflecting the attorney's normal hourly rates, holding that fee awards induce better plaintiff's attorneys to represent plaintiffs in civil rights cases under §1983 who might not otherwise find representation. *Blum v. Stenson*, 465 U.S. 886 (1984). Without such incentive, plaintiffs like Urquhart and Sykes would have had a difficult if not impossible time finding experienced legal representation willing to devote so much time and effort to their civil rights claims. **[See Exhs. 7-10, Affidavits of James K. Robinson, Richard A. Soble, Hugh M. Davis** and **Amos E. Williams,** for sworn corroboration of this reality.]**

### 5.      The Amount Involved and Results Obtained

As a direct consequence of their unlawful arrest and convictions, Plaintiffs Urquhart and

Sykes both lost their jobs at the Detroit-area Sprint location. Moreover, Plaintiffs lost years' worth of potential earnings while in jail and since. They have suffered substantial noneconomic damages as well, having endured psychological and emotional stress stemming from the charges and subsequent conviction. While those convictions were eventually vacated, Plaintiffs' attorneys were able to show that these two women will be left with emotional scars that will haunt them for the rest of their lives, as strongly confirmed by the extensive psychological evaluations and subsequent testimony from psychiatric expert Dr. Rosalind Griffin.

Recognizing these injuries, and the importance of sending a message of deterrence, the jury rendered a substantial award in compensatory and punitive damages.  This outcome surely constitutes an outstanding result and warrants the full reasonable attorney's fees requested herein.

### 6. The Experience, Reputation, and Ability of the Attorneys

Civil rights plaintiffs are no less entitled to top-rate, vigorous representation, and awarding appropriate attorney's fees in cases such as this allows experienced lawyers, and their support staff, to practice on behalf of clients who might otherwise be unable to afford their services. Plaintiffs' counsel respectfully assert that their experience, reputation and general ability as litigators justifies an award at the following reasonable lodestar rates (before any upward adjustment or multiplier)[8]:

> ➢ Thomas Loeb:      lodestar rate (before upward adjustment):    $350/hour
> ➢  Julie H. Hurwitz:      lodestar rate (before upward adjustment):    $350/hour
> ➢ Kathryn B. James:      $150/hour
> ➢ Kathleen Kalahar:      $250/hour
> ➢ Paralegal Gary Gant:      $125/hour
> ➢ Paralegal Kim Cochrane:      $125/hour
> ➢ Paralegal Kara Sullivan:      $125/hour
> ➢ Paralegal/technical assistants:      $75/hour
> ➢ Law Students Melanie Elturk & Caryn Smith:      $100/hour

### a. Thomas Loeb   [Exh. 1, Thomas Loeb Affidavit]

---

[8] See pp. 19-20 below for discussion of the Plaintiffs' right to a multiplier in this case.

Attorney Thomas Loeb has represented Plaintiff Tevya Urquhart from 2005 to the present, and has expended a total of 664.7 hours in the case to date. The Plaintiffs here were successful on their claims due in large part to Loeb's background and experience in litigating civil rights claims in Southeast Michigan. **[See Exhs. 9 & 10, Affidavits of Davis and Williams].**

A 1975 graduate of the Wayne State University Law School, Mr. Loeb has practiced law in the State of Michigan since May of 1976. Upon receiving his license to practice law, he worked as an assistant defender at the Felony Defender's Office in the City of Detroit. Mr. Loeb then worked as a trial lawyer in Detroit's Recorder's Court from 1976 through 1978. Mr. Loeb went on to work for Simon & Fried P.C. from 1978 to 1982, where he developed the firm's police misconduct litigation division. In 1982, Mr. Loeb started his own private practice, in which he focuses on the areas of criminal defense, plaintiff's federal civil rights litigation, professional responsibility and grievance defense, and family law.

Loeb's outstanding skill and experience level are set forth in greater detail in his Affidavit, attached hereto. **[Exh. 1]**

The lodestar rate sought for this litigation reflects Mr. Loeb's hourly rates during the years of litigation. For the hours spent on this case, Loeb's lodestar rate is $350/hour, before any upward adjustment. The reasonableness of this rate is supported by Thomas Loeb's legal skills and years of experience, coupled the Affidavits of Hugh M Davis **[Exh. 9]** and Amos E. Williams, **[Exh. 10]**, both highly respected attorneys from this community.

### b.   Julie Hurwitz  [Exh. 2, Julie Hurwitz Affidavit]

Attorney Julie Hurwitz has represented Plaintiff Kimberly Sykes from February 2006 to the present and has expended a total of 1,615 hours in this case to date. The Plaintiffs were successful on their claims largely as a result of Hurwitz's strong academic background and extensive experience in litigating civil rights claims in Southeast Michigan.

11

Ms. Hurwitz has built a prominent and successful civil rights law firm from scratch.  After graduating from the University of California at Berkeley, phi beta kappa, in 1978, with an undergraduate degree in Economics, and the University of Michigan Law School in 1982, she became the sole shareholder of the Detroit-based law firm of Julie Hurwitz, P.C. from 1983 thru July 1st, 2007, specializing in civil rights litigation with an emphasis on police misconduct and government liability.

A civil rights lawyer for 26 years, she has successfully tried to jury verdict, as either second-chair or lead counsel, more than a dozen civil rights, workers' rights or premises liability cases, all resulting in verdicts ranging from $250,000 to $8,000,000.  Ms. Hurwitz's impressive professional achievements and level of ability are set forth on her Affidavit, attached hereto. **[See Exh. 2]**

The rate sought for this litigation reflects Ms. Hurwitz's hourly rates during the years of litigation, her legal skills and years of experience. For the hours spent on this case, Hurwitz's lodestar rate is $350/hour, before any upward adjustments.  The reasonableness of this rate is supported by the Affidavits of James Robinson **[Exh. 7],** Richard Soble **[Exh. 8],** Hugh M. Davis **[Exh. 9],** and Amos E. Williams, **[Exh. 10]**, all highly respected attorneys from this community, and by an applicable analysis of the *Johnson* factors to this case.

### c.   <u>Kathryn Bruner James</u> [Exh. 3, Kathryn Bruner James Affidavit]

Kathryn James has worked on this case for the past two years, first as a law student, starting in July 2006, then as a law graduate, starting in August 2007, and later as an associate attorney at Goodman & Hurwitz, P.C., after being admitted to the bar in December 2007. She has expended a total of 1,099.85 hours in the case to date. Her qualifications are set forth in her attached Affidavit **[Exh. 3]** and that of Attorney Hurwitz **[Exh. 2]**.

Her responsibilities in this case have included: substantive research and writing in response to the multiple dispositive motions filed by Defendants; preparation of discovery pleadings;

responsibility for reviewing, summarizing and organizing the voluminous documents in the case; assisting in the preparation for and taking of depositions; assisting with witness interviews and preparation; coordination of transcripts and exhibits at trial; witness coordination and contact during trial.  The rate sought for her involvement in this litigation reflects her excellent academic record and experience in the litigation of civil rights claims. Plaintiffs seek $150/hr for Ms. James.

### d.  <u>Kathleen Kalahar</u>  **[Exh. 4, Kathleen Kalahar Affidavit]**

Attorney Kathleen Kalahar has assisted Ms. Hurwitz on this case since July 2007. In particular, Ms. Kalahar conducted legal research and helped prepare motions and briefs prior to and during the trial. She also analyzed and prepared an important trial exhibit – a frame-by-frame presentation of the videotaped robbery of which Plaintiffs were victims. Her qualifications have been delivered in her attached affidavit. **[Exh. 4]**  She has expended a total of 77.9 hours in the case to date.

Ms. Kalahar agreed to assist in this case at a rate of $250/hr. This rate reflects Ms. Kalahar's skill and experience as a trial attorney generally, as well as her talent for preparing briefs and exihibits for the Court under particularly tight time constraints.

### 7.  <u>Awards in Similar Cases and Customary Hourly Rates for Lawyers with Similar Skills and Experience</u>

Attorney fees are to be based on the "prevailing market rates in the relevant community" for the services rendered. *Blum,* 104 U.S. at 895; *Adcock-Ladd v. Sec'y of Treasury,* 227 F.3d 343, 350 (6th Cir. 2004); *Hadix v. Johnson,* 65 F.3d 532, 536 (6th Cir.1995). A reasonable rate is one which will attract qualified and competent counsel but will not produce a windfall to the attorneys. *Blum,* 465 U.S. at 897.  The hourly rates for Plaintiffs' attorneys in this case are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation" *Blum,* 465 U.S. at 895.  **[Exhs. 7-10, Affidavits of Robinson, Soble,**

**Davis, and Williams]**  The Supreme Court in *Blum* acknowledged that because of the wide variations in lawyers' rates within any given community, "…determining an appropriate 'market rate'…is inherently difficult…," and vary widely.  *Id.*

When considering the determination of the applicable "reasonable hourly rate" within the meaning of §1988, *Hensley* and its progeny, courts are instructed to look to similar cases for guidance, as well as any other "….satisfactory evidence -- in addition to the attorney's own affidavits --that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to-for convenience-as the prevailing market rate."  465 U.S. at 895, n.11.  **[See Exhs. 1-4 & 7-10, Affidavits]**

In Michigan, there are a handful of cases which also provide guidance. In *Taylor v. Currie*, 743 N.W.2d 571 (Mich. App. 2007) the Michigan Court of Appeals upheld a 2006 trial court attorney fee at $375/hr awarded to attorney Hugh Davis,[9] noting that the trial court "…was familiar with the rates charged by Detroit attorneys of plaintiff's attorneys' experience and expertise and concluded that $375 an hour was very reasonable." *Id.* at 582.  The Michigan appellate court further held that:

> "Because the trial court based its decision on appropriate considerations and selected a rate [$375/hour] that was within the range of reasonable and principled outcomes, it did not abuse its discretion. [citation omitted]" *Id.*

The lodestar rate requested by Plaintiffs' counsel herein, $350/hour, because of the particular circumstances of this case and these Plaintiffs' attorneys skills and experience, is thus eminently reasonable in this jurisdiction for this case.[10]

---

[9] Mr. Davis has submitted an Affidavit in support of Plaintiffs' Petition herein, **[Exh. 9, Hugh M. Davis Affidavit]**, thereby lending further support for the reasonableness of Plaintiffs' counsel's hourly rates in this case.

[10] See also Judge Cleland's opinions in the federal case of the same name, *Taylor v. Currie,* Case No. 05-CV-73418-DT, in which he issued two (2) separate opinions in November and December 2005, whereby he

Moreover, this Court is not required to look solely at a particular practice area for guidance, but instead has the discretion to look at national markets, an area of specialization, or any other market which would result in fair compensation to attorneys in individual cases. *McHugh v. Olympia Entertainment Inc.*, 37 Fed. Appx. 730 (6th Cir. 2002). This court has broad discretion to award a rate higher than the local market, taking into account the factors reflecting the attorneys' skill and the difficulty of the case. See *Wayne v. Village of Sebring*, 36 F.3d 517, 533 (6th Cir. 1994). Thus, it is instructive that, just this month, July 2008, the U.S. District Court for the Southern District of Ohio awarded $400/hour to the prevailing party after a settlement of a §1983 case arising from false arrest, excessive force and unreasonable search of the plaintiff. *McConaha,* 2008 WL 2697310, at *3.

Further support for the rate requested by Plaintiffs' counsel can be found in the Affidavits from local attorneys attached hereto, which describe the rates they would expect to see awarded in the instant cases, to civil rights litigators of similar caliber and experience. **[Exhs. 7-10]**

## C. THE PARALEGAL/LAW STUDENT FEES REFLECT REASONABLE RATES AND TIME SPENT ON THE LITIGATION

The paralegal fees requested in this Petition, ranging from $75 to $125/hour, are also reasonable when compared to the current market rates in this jurisdiction awarded in similar cases. As recently as last year, an award of $100/hr was awarded for paralegal work done in this district. *Baskin Robbins v. Livonia Ice Cream*, No. 07-CV-10987, 2007 WL 4181422 (E.D. Mich. Nov. 27, 2007). An award of $125/hr was ruled a reasonable paralegal fee in a civil rights case in *Morris v. Eversley*, 343 F.Supp.2d 234, 248 (S.D.N.Y. 2004). In fact, bankruptcy courts have placed a cap for awards of paralegal fees at one-third the highest hourly rate allowed for attorneys. *In re Optical Corp. of America Inc.*, 157 BR 823 (Bkrtcy. W.D. Ky. 1993). Plaintiffs' request for $75 to

---

awarded both Mr. Davis and his co-counsel Stephen Wasinger attorney fees at $375/hour, finding that rate to be reasonable. **[C.A. No. 05-CV-73418-DT, Doc. # 29, p.13 and Doc. #32, p.2]**

$125/hour falls well within the parameters outlined by these courts.

The qualifications and responsibilities of the following paralegals and law students are outlined in Ms. Hurwitz's attached Affidavit **[Exh. 2]**:

**a.    Gary Gant: Paralegal, Goodman & Hurwitz, P.C.:**  Gary Gant has worked as a paralegal since the early 1980s. His responsibilities in this case have included: document review, summaries and organization; drafting pleadings, memoranda and correspondence; communicating with opposing counsel, witnesses and the court regarding discovery and scheduling; e-filing; overall administrative tasks specifically related to this litigation.  He has expended a total of 547.95 hours in the case to date.

**b.    Kara Sullivan; Law Grad/Paralegal, Goodman & Hurwitz, P.C.:**  Ms. Sullivan graduated from the University of Detroit Law School in May 2007, but has chosen not to practice law at this time. Ms. Sullivan's primary responsibilities in this case have been to coordinate and oversee the entry of Timeslips data from the Goodman & Hurwitz PC attorneys' and paralegals' contemporaneous handwritten time records, and to compile and organize all the reasonable case costs incurred by Goodman & Hurwitz PC.  She has expended a total of 43.45 hours in the case to date. **[Exh. 5]**

**c.    Melanie Elturk: Law Student Clerk, Wayne State University Law School:** Ms. Elturk worked for Goodman & Hurwitz, P.C. during the 2007-08 academic year, while a 3rd year law student.  Ms. Elturk was the recipient of several scholarships (Robert & Marie Fayz Scholarship, Haralambos Mihas Scholarship and Ernie & Freda Goodman Scholarship) and moot court awards during law school.  Her responsibilities in this case included: comprehensive research and writing; document reviews and summaries; and drafting jury instructions.  She expended a total of 198.8 hours in the case. **[Exh. 5]**

**d.    Caryn Smith: Law Student Clerk, University of Michigan Law School:**

Ms. Smith is a recipient of the Clarence Darrow Scholarship at U of M, a merit-award including full-tuition and is working for Goodman & Hurwitz, P.C. during the 2008 summer.  Her responsibilities in this case have included primarily the research and drafting of this *Petition for Attorney Fees*. She has expended 81.15 hours in the case, to date. **[Exh. 5]**

### D. <u>PLAINTIFFS' TIME RECORDS REFLECT A REASONABLE EXPENDITURE OF TIME</u>

Plaintiffs were represented throughout the litigation by Attorney Hurwitz and Attorney Loeb. These attorneys also had assistance from law clerks and paralegals at their respective firms, with some minimal assistance from an attorney outside the respective firms, Kathleen Kalahar. As has always been the practice at both firms, Hurwitz and Loeb kept contemporaneous time records throughout the course of litigation. Hurwitz and the other employees at her firm used handwritten daily logs which were then input into the firm's Timeslips billing software and reviewed thereafter for accuracy by Hurwitz. Goodman & Hurwitz bills for every six minutes of time spent on a case. **[Exh. 2, Julie Hurwitz Affidavit]** The total amount of time expended by Hurwitz and her firm as of the date of filing this *Petition,* [3,816.2] is fully set forth and itemized in Plaintiff Sykes' "Time Slips Summary."  **[Exh. 5]**

Loeb and his paralegal, Kim Cochrane, also kept contemporaneous time records using handwritten daily logs. Instead of inputting this information directly into Timeslips or Excel, Loeb utilizes a table in a WordPerfect document, which is updated periodically from the handwritten time sheets and then printed, reviewed and sent to clients as necessary. **[Exh. 1, Thomas Loeb Affidavit]**  The total amount of time expended by Loeb and his firm as of the date of filing this *Petition*, [726.35 hours] is fully set forth in Plaintiff Urquhart's "Time Records" [**Exh. 6**].

As reflected in the time records, **[Exh. 5 & 6],** Hurwitz and her firm were primarily responsible for representation of Plaintiff SYKES, and also in preparing joint responses to

dispositive motions, litigating discovery disputes, preparing demonstrative trial materials,

preparation of witnesses, working with experts, presentation of Plaintiffs and their damages at trial

and the preparation of this *Petition*. Loeb and his office were primarily responsible for

representation of Plaintiff URQUHART, and also for the preparation of witnesses and briefs, and

presentation of liability witnesses at trial. Counsel consulted as necessary to make strategic

decisions regarding representation of their clients, and met both together and separately with

Plaintiffs to prepare them for their depositions and trial testimony, as well as explain the various

stages of the proceedings and necessary decisions. However, their time was not duplicative.  In

total, counsel and their support staffs expended more than 4,500 hours vindicating the

constitutional rights of their clients. **[See Exhs. 5 & 6, Goodman & Hurwitz P.C. Summary of**

**Hours/Costs, Thomas M. Loeb Summary of Hours/Costs; Exhs. 1, 2, 7-10, Thomas Loeb**

**Affidavit,  Julie Hurwitz Affidavit, Affidavits in Support: Robinson, Soble, Davis, Williams]**

E. **THE FACT THAT PLAINTIFF'S CASE WAS SO INTENSELY CONTESTED BY THE DEFENSE RAISED THE TOTAL HOURS MORE THAN THEY OTHERWISE MIGHT HAVE BEEN**

A large amount of time was spent responding to comprehensive and unnecessary motions,[11]

litigating discovery disputes and proving every single factual and legal element of Plaintiffs'

claims. Similarly, because Defendants refused to take any reasonable steps to settle, or even to

concede to any of the underlying factual issues, (several of which should have been stipulated),[12]

---

[11] For example, in June 2006, Defendants filed a summary judgment motion **[Doc. #19]** before any meaningful discovery had even occurred, the response to which required Plaintiffs' counsel to expend hundreds of hours, and which was ultimately denied by the Court as being premature. **[Doc. #48]** Moreover, in their second summary judgment motion, filed in June 2007, **[Doc. #73],** Defendants raised several meritless arguments, all of which had to be responded to. Similarly, in their post trial renewed motion for judgment **[Doc. #178],** Defendants again raised arguments which had no merit, e.g., making summary judgment and qualified immunity arguments which were clearly inappropriate in a post trial motion such as this.

[12] For example, the evidence was overwhelming that in fact these Plaintiffs were actually innocent of the crimes for which they were prosecuted. Defendants pursued a ludicrous defense strategy that continued to portray both women as criminals, thus requiring substantial time having to prove their innocence again.

Plaintiffs' counsel had to expend hundreds of additional hours and thousands of additional dollars preparing exhibits and witnesses for trial.[13] While Plaintiffs respect Defendants' right to vigorous representation, opposing counsel needlessly increased the overall cost of litigation and Plaintiffs should not bear the costs of that decision.

Additionally Defendants' refusal to engage in meaningful settlement discussions or make any reasonable settlement offers necessitated further expenditure of attorney time. In *Riverside,* the Supreme Court unequivocally held that where a defendant could have avoided much of the contested fee award by stipulating to undisputed facts or by settling at a reasonable time, or even by making a reasonable settlement offer, the amount requested in attorney's fees would not be reduced:

> "'[Defendants] could have avoided liability for the bulk of the attorney's fees…by making a reasonable settlement offer in a timely manner…The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.'"

*Id.* at p.581, n.11 (citing *Copeland v. Marshall,* 641 F.2d 880, 904 (1980))

## F. UPWARD ADJUSTMENT OF THE LEAD PLAINTIFFS' COUNSELS FEES IS APPROPRIATE IN THIS CASE

The Sixth Circuit has recently re-affirmed that the amount awarded in attorney fees may be adjusted upward if, as in this case, there is an "exceptional success." *Barnes v. Cincinnati, 401* F.3d 729 (6th Cir. 2005), citing *Blum* at 895.  The Court upheld a 1.75 fee enhancement to the lodestar rate, finding that the district court clearly explained why a fee enhancement was called for, i.e. that:

> "…the result was extraordinary and the case was highly controversial, based on the *affidavits of two Cincinnati attorneys who stated that few lawyers locally or nationally would take such a case.*"

---

[13] See more discussion of this issue at pp.1-3 above.  See also **Exhibits 1, 5, 6, Julie Hurwitz Affidavit, Plaintiffs' Summaries of Time and Costs.**

*Id.* at 746. (Emphasis added)

It is well within the Court's discretion to increase the amount of attorney's fees awarded through the use of a multiplier. The Sixth Circuit has recently recognized that in cases involving particularly difficult challenges or litigated by attorneys with superior experience and skill, the courts enjoy wide discretion in awarding attorneys fees. *Fair Housing Advocates Association v. Terrace Plaza Apartments*, 2007 WL 445477 (S.D. Ohio Feb. 6, 2007) citing *Barnes*. See also *Brotherton v. Cleveland* 141 F.Supp.2d 907, 913 (S.D. Ohio 2001) (150% enhancement to counsel who achieved exceptional results by taking on an unpopular case which others turned down); *Hollowell v. Gravett*, 723 F.Supp. 107, 110 (E.D. Ark. 1989) (75% enhancement where plaintiff's attorney prepared the case thoroughly and provided excellent representation under "the most adverse circumstances").

The instant cases herein meet all the criteria for this Court to properly apply an enhancement of merely 15% to Plaintiffs' total lodestar calculation:  1) Affidavits from respected attorneys in the community stating that few lawyers would have taken these cases,[14] **[Exhs. 7-10];** and 2) particularly challenging issues litigated by experienced and skilled attorneys who were thoroughly prepared.  Adding the requested 15% multiplier to the lodestar calculation would result in the following fee awards:

> ➢ $995,530.85 to Attorney Hurwitz (including members of her firm) [872,896.25 – 7,217.25 10% reduction for unsuccessful *Monell* claim + 15%]

> ➢ $267,541.75 to Attorney Loeb (including members of his firm) [232,645 + 15%]

## G. PLAINTIFFS ARE ENTITLED TO FEES FOR TIME SPENT ON

---

[14] Indeed, Plaintiff Sykes' first attorney, Ben Gonek, an experienced civil rights attorney in Detroit, referred her case to Attorney Hurwitz because he felt it was too risky for his firm to undertake. **[Exh. 2, Hurwitz Affidavit]**  It should also be noted that Plaintiff Sykes is not seeking payment for the hundreds of hours expended by Mr. Gonek between 2004 and May 2006, when Attorney Hurwitz entered her appearance.

## UNSUCCESSFUL CLAIMS, AS SUBSTANTIALLY RELATED TO THE SUCCESSFUL CLAIMS

Plaintiffs successfully proved every one of the constitutional violations they alleged,[15] although not against every named defendant.[16]  The governing law on this issue has long held that a prevailing party's success, as well as the amount awarded in fees, should not be reduced based on a simple ratio of the number of successful claims to claims raised. *Thurman v. Yellow Freight Systems, Inc.,* 90 F.3d 1160, 1169 (6th Cir. 1996); *Phelan v. Bell*, 8 F.3d 369, 374-375 (6th Cir. 1993) (finding prevailing plaintiff entitled to fees for 100% of time even though prevailed on only 75% of claims). It is by now axiomatic that, as articulated by the Supreme Court in *Hensley*:

> "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee…In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. [citation omitted]. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. *The result is what matters.* [fn omitted]"

461 U.S. at 435. (Emphasis added).

In *Thurman,* the plaintiff in a §1981/Title VII claim prevailed on only two of his six claims. The Sixth Circuit[17], however, properly analyzed the law governing attorney fee awards under §1988 by holding that, cases which are based on a "common core of facts," as here:

---

[15] In Count I of her First Amended Complaint **[Sykes Doc.#49]** Plaintiff Sykes alleged that she was falsely arrested and imprisoned (unreasonable seizure under 4th Amendment) , maliciously prosecuted (unreasonable seizure under 4th Amendment), and that she was deprived of her due process right to a fair trial by the unconstitutional withholding of exculpatory evidence (*Brady* violation, 14th Amendment), the fabrication of evidence and the misrepresentation of facts in the Warrant Request and at her trial.  She prevailed on every one of those claims.  Similarly, at ¶35 of her First Amended Complaint **[Urquhart Doc. #50],** Plaintiff Urquhart alleged the deprivation of her rights under the 4th Amendment (malicious prosecution) and the 14th Amendment (due process right to fair  trial, to wit: the right not to have evidence fabricated against her, the right to have all exculpatory evidence disclosed and the right not to misrepresent the facts set forth in the Warrant Request and at her trial).

[16] Long before the trial, Plaintiffs agreed to dismiss Defendants Jones and Copeland, immediately prior to the trial this Court granted summary judgment to Defendant City of Detroit, and at the trial the jury found in favor of Defendant McClure.

[17] As this Court may recall, the Honorable Judge Nancy Edmunds authored the *Thurman* opinion, sitting on the Court of Appeals by designation in that case.

"…cannot be viewed as a series of discrete claims.  Instead *the district court should focus on the significance of the overall relief obtained* by the plaintiff in relation to the hours reasonably expended on the litigation."

*Id.* at 1170 (Emphasis added); *See also*, *Bryant v.Nighbert*, No. Civ.A.03-183, 2005 WL 2234636 (E.D.Ky. Sept. 14, 2005); *Barnes*, 401 F.3d at 745.

Similarly, in *Woolridge v. Marlene Industries Corp.*, 898 F.2d 1169 (6th Cir. 1990):

"The question is not . . . whether in hindsight the time expenditure was strictly necessary to obtain the relief achieved. Rather, *the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed*."

*Id.,* at 1177 (Emphasis added); *See also, McConaha,* 2008 WL 2697310 at *2-3.

In *Rivera,* the §1983 plaintiffs named over 30 police/municipal defendants and were only successful against six (6) of them. Nonetheless, the Supreme Court upheld the lower courts' fee award for the total number of hours expended, including those on unsuccessful claims. The Court stated:

"… *Hensley* emphasized that '[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee,' and that 'the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.'"

*Rivera,* 477 U.S. at 569 (citing *Hensley,* at 435)*.*

In this case, the unsuccessful claims against the City and Defendant McClure were directly related to the overall claims on which Plaintiff prevailed and were part of a "common core of facts."  With respect to McClure, it is indisputable that the time spent deposing McClure, reviewing his personnel file, investigating his actions related to the arrest and conviction of Plaintiffs Sykes and Urquhart, and procuring his testimony at the trial, was integrally bound up with – was part of the "common core of facts" – that contributed to the finding of liability against Defendants Nichols and Anderson..

With respect to Plaintiffs' *Monell* claim, the courts in this Circuit have held that the time spent on *Monell* claims, even if unsuccessful, is a reasonable use of time in the pursuit of justice. *Bryant,*

2005 WL 2234636.  In *Bryant*, as in this case, the prevailing plaintiff's *Monell* claim was dismissed before trial; however, the court declined to reduce the prevailing attorney's time spent on that claim, ruling that:

> "…while the *Monell* claims and the claims against the police chief may involve allegations of more widespread conduct than the claim against [defendant], *all the claims necessarily involved [defendant's] conduct when he arrested Bryant*…Further, the claim against [defendant] *would reasonably involve research regarding the broader issue of training and supervision in reasonable police procedures offered generally by the police department...*Accordingly, these are all related claims for purposes of the lodestar calculation."

*Id.* at *6.

Because of the difficulty involved in dividing time spent on the successful and unsuccessful claims, the court found that an attempt at subtracting any hours spent on the unsuccessful claims would be inappropriate.

Similarly, in the instant cases, Plaintiffs' unsuccessful *Monell* claims were substantially related to the successful claims against Defendants Anderson and Nichols. For example, part and parcel of the claims against the two Defendants included evidence that emerged during the investigation of the departmental procedures for criminal investigations and handling of evidence as part of Plaintiffs' *Monell* claims.  Moreover, as in *Bryant*, Plaintiffs' *Monell* claims necessarily involved the actions taken by the individual Defendant officers, and the claims against Nichols and Anderson reasonably involved research into the policies and procedures of the Detroit Police Department. Review of personnel files, statistics related to internal investigations, and other investigation of the Department as a whole informed Plaintiffs' counsel as to the general character of the parties and related evidence, and aided them in preparation for examination and cross-exam.

The fact that Defendants won some of the battles does not justify a downward adjustment in the amount in fees awarded to Plaintiffs' attorneys. *See*, *Jaffee v. Redmond*, 142 F.3d 409, 413-17 (7th Cir. 1998) ("when plaintiffs attain success, courts should not decline to award fees to the

plaintiffs' attorneys solely because certain zealous advocacy that was appropriately provided their clients did not contribute directly to that success. This approach would be at odds with the norms of professional responsibility."), citing *Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991) ("If a plaintiff ultimately wins on a particular claim, she is entitled to all attorney's fees reasonably expended in pursuing that claim -- even though she may have suffered some adverse rulings" along the way); *Kurowski v. Krajewski*, 848 F.2d 767, 776 (7th Cir.), *cert. denied*, 488 U.S. 926 (1988) (refusing to cut time for research spent on unsuccessful arguments because "a losing argument in support of a successful claim for relief is fully compensable time") (quoting *Hensley*).

In the end, what should be considered by the court is not whether a given argument was successful, but rather whether it was reasonable. *See*, *People Who Care v. Rockford Board of Ed.*, 90 F.3d 1307, 1314 (7th Cir. 1996); *South Rothschild Liquor Mart, Inc. v. Kozubowski*, 775 F.Supp. 1129 (N.D. Ill. 1991). Here, the claims asserted against all Defendants were reasonable in light of the roles each played in the arrests, prosecutions and overturned convictions. While some claims may have been unsuccessful, the time spent in pursuit of those reasonably argued claims should be compensated by this Court.

### 1. However, Plaintiffs Will Reduce Their Fee Request By Ten Percent of The Lodestar Amount For The Time Spent Only on Their Unsuccessful *Monell* Claim

In an effort to resolve this issue, and by way of compromise, Plaintiffs will reduce their fee request by ten percent (10%) of the amount of time spent litigating their unsuccessful *Monell* claim. Although they assert that are entitled to full compensation for all time expended on all their claims, as set forth above, to the extent that some percentage of time spent on the unsuccessful *Monell* claim may arguably have been unrelated to the overall claims on which they prevailed, this reduction is offered. *See, McConaha,* 2008 WL 2697310, at *2.

24

Thus, based on her contemporaneous time records, Attorney Hurwitz calculates that she expended a total of approximately 124.8 hours exclusively on the *Monell* claim (deposing Ainsley Cromwell, drafting briefs, reviewing records, etc.); Attorney James expended a total of approximately 175.2 hours, paralegal Gary Gant expended approximately 9 hours and Attorney Kathleen Kalahar expended approximately 4.35 hours.  Based on their lodestar rates, the reduction is calculated as follows:

    **a.  Hurwitz:** 124.8 hours @ $350/hour = $43,680  @10% = $4,368.00

    **b.  James:** 175.2 hours @ $150/hour = $26,280 @ 10% = $2,628.00

    **c.  Gant:** 9.0 hours @ $125/hour = $ 1,125 @  10% = $   112.50

    **d.  Kalahar:** 4.35 hours@ $250/hour = $1,087.50 @ 10% = <u>$ 108.75</u>

                    **TOTAL 10% REDUCTION:**        **$7,217.25**

    **2.  <u>None of Attorney Ben Gonek's Time Is Being Billed</u>**

As a further compromise on the total amount of time for litigating Plaintiff Sykes' claims, she is not claiming any of the time he spent on this case, from late 2004 through May 23 2006, when Attorney Hurwitz entered an appearance on behalf of Ms. Sykes. **[See Exh. 2, Hurwitz Affidavit;** *See also,* **Sykes Doc. #17]**

**H.  <u>CONSULTATION WITH CO-COUNSEL AND WITH COUNSEL FOR OTHER PLAINTIFF IS NOT DUPLICATIVE AND DESERVES TO BE FULLY COMPENSATED</u>**

In anticipation of Defendants arguing that the amount requested is duplicative.  This argument is without merit.  First, the vast majority of time spent by Hurwitz and Loeb consulting with one another or co-attending a hearing or deposition was while each was separately representing the two Plaintiffs.  As such, they were each representing different interests and therefore there was no "duplication."  Second, any time spent in a more "co-counsel" capacity,

such as between Attorneys Hurwitz and James, should not be reduced either.  While there was some need for duplication of work between the attorneys, the amount of duplication was minimal, and "it is within the Court's discretion to grant attorneys fees for time spent conferring with co-counsel and with subordinates." *Knop v. Johnson*, 712 F. Supp. 571 (W.D. Mich. 1989).

*Brack v. Shoney's Inc.*, 2004 WL 2806495 (W.D. Tenn. June 29, 2004) notes that:

> "…in a case with multiple attorneys, it is inevitable that some of the work will be performed by both attorneys… Both attorneys may bill for their meetings with each other, as both attorneys' time is being expended"

*Id.* at 5.

Moreover, with respect to the hours counselors Hurwitz and James spent reviewing the materials of this case, Michigan courts have held that time spent discussing an action with younger members of the firm is still considered billable time for both attorneys involved. *Citizens Ins. Co. of America v. KIC Chemicals Inc.*, 2007 WL 2902213 (W.D. Mich. Oct. 1, 2007). The court found that "office consultations alert less experience attorneys to litigation pitfalls and save both the federal courts and many parties avoidable legal problems and the unnecessary expenditure of resources" (citing *Crosby*, 262 F. Supp. 2d at 816) and "the court has discretion to award attorney's fees based on time spent conferring with co-counsel" (citing *Berberena v. Coler*, 753 F.2d 629).

## I.   PLAINTIFFS' ARE ENTITLED TO COMPENSATION FOR THE TIME SPENT PREPARING THIS PETITION FOR FEES

It is well established in the Sixth Circuit that where an award of fees is appropriate, the amount of time reasonably spent in preparation is compensable:

> "[A]n attorney may be recompensed for time preparing attorney fee petitions, but [i]n the absence of unusual circumstances, the hours allowed for preparing and litigating the attorney fee case should not exceed … 5% *of the hours* in the main case when a trial is necessary."

*Coulter v. Tennessee*, 805 F.d2 146, 151 (6th Cir. 1986).

Plaintiffs are also entitled to compensation for the time spent preparing supporting materials within their request. *Hance v. Norfolk Southern Railway*, No. 3:04-CV-160, 2007 WL 3046355 (E.D. Tenn. Oct. 16, 2007); S*ee also, Shields v. Government Employees Hosp. Association Inc.*, No 1:03-cv-395, 2008 WL 1745617 (W.D. Mich. Apr. 14, 2008). Here, Plaintiffs attorneys spent 4,500 hours on the litigation of this case and only 94.25 hours on the preparation of this petition and the supporting materials attached hereto, constituting significantly less than 5% of the total number of hours spent litigating the underlying claims.  As such, all of the time spent preparing this *Petition* and the supporting materials should be fully compensated.[18]

### J.  PLAINTIFFS ARE ENTITLED TO COSTS

In addition to attorney's fees, Plaintiffs are also entitled to costs pursuant to 42 U.S.C. §1988. Those out-of-pocket litigation costs would normally be billed to a fee-paying client are recoverable under the statute for the prevailing party in a §1983 case. *Northcross v. City of Memphis Schools*, 611 F.2d 624, 639 (6th Cir. 1979); *Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994); *Doe ex rel. Doe v. Keala*, 361 F.Supp.2d 1171 (D.Hawai'i 2005). "Out-of-pocket expenses for long distance telephone calls, messenger service, postage, facsimile, computerized legal research, and travel are ordinarily allowed under Section 1988." *Erickson v. City of Topeka*, 239 F.Supp.2d 1202, 1211-12 (D.Kan.2002). *See also*, *Beazer v. New York City Transit Authority*, 558 F.2d 97 (2d Cir. 1977), *rev'd on other grounds*, 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979).  Plaintiffs here petition the Court to award costs as allowed by statute and outlined below in addition to the attorney's fees already discussed. **[Exhs. 5 & 6, Plaintiffs' Summaries of Time and Costs].**

### 1.  Costs of Copying and Postage

Reasonable photocopying, paralegal expenses, and telephone costs are all recoverable under

---

[18] It should also be noted that for as long as this case continues to be litigated, whether in regard to Plaintiffs' attorney fees and costs, or in regard to any appeals, so long as Plaintiffs continue to be the "prevailing parties," all of the time expended from this time on into the future will also be recoverable under §1988.  *Bond v. Stanton,* 630 F.2d 1231 (7th Cir. 1980); *Northcross* 611 F.2d at 637.

the statutory authority of §1988. *Northcross,* 611 F.2d at 639*; Homans v. City of Albuquerque* 264 F.Supp.2d 972 (D.N.M. 2003). During the course of litigation, Plaintiffs' attorneys spent $XX in copying[19] and mailing costs. These costs do not constitute a general overhead cost for counsel, and Plaintiffs' request that these costs be awarded pursuant to §1988.

### 2.  Investigation Costs

Litigation of this case required Plaintiffs' counsel to spend $XXX in investigation costs in order to contact witnesses and guarantee their presence at trial. Said expense was necessary to provide Plaintiffs with both effective and competent representation as discussed in

### 3.  Travel Expenses

Plaintiffs' counsel requests reimbursement for out of pocket travel expenses during the course of litigation. Mileage to court, as well as parking costs, falls under the travel expenses considered in *Erickson.*  Counsel paid these out-of-pocket costs in the course of representing Plaintiffs, and requests that they be reimbursed for that expense.

### K.  CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court grant their request for attorney's fees in the amount specifically set forth above.

Respectfully Submitted,

GOODMAN & HURWITZ, P.C.          THOMAS M. LOEB

By: s/Julie H. Hurwitz                    By: s/with consent of Thomas M. Loeb

---

[19] Plaintiffs made 15,518 photocopies during this case, at the rate of .50/page, totaling  $7.759.00. **[Exh. 5]** This calculation is based this Court's Fee Schedule, retrieved from the U.S. District Court, Eastern District of Michigan website, which charges .50/page for copies made by court staff.  Supporting documentation for the number of copies will be provided at the Court's request.

| | |
|---|---|
| Julie H. Hurwitz P34720<br>Kathryn Bruner James P71374<br>Attorneys for Plaintiff Sykes, Case #05-71199<br>1394 E. Jefferson Ave.<br>Detroit, MI  48207<br>(313) 567-6170<br>jhurwitz@goodmanhurwitz.com | THOMAS M. LOEB P25913<br>Attorney for Plaintiff Urquhart, Case #05-73725<br>32000 Northwestern Hwy Ste 170<br>Farmington Hills, MI 48334<br>Phone: (248) 851-2020<br>tmloeb1@mich.com |

Dated:  **July 23, 2008**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on **July 23, 2008**, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to Krystal A. Crittendon, Attorney for Defendants, critk@law.ci.detroit.mi.us, and all attorneys of record.

   s/Julie H. Hurwitz_____
Julie H. Hurwitz
GOODMAN & HURWITZ, P.C.
1394 E. Jefferson Ave.
Detroit, MI 48207
(313) 567-6170
jhurwitz@goodmanhurwitz.com
P34720